*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTON DUKAJ,

        Defendant-Appellant.

UNPUBLISHED
June 25, 2020

No. 345319
Macomb Circuit Court
LC No. 2015-002347-FH

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of assault with intent to commit second-degree criminal sexual conduct (CSC-II), MCL 750.520g(2). The jury acquitted defendant of an additional count of second-degree home invasion, MCL 750.110a(3). The trial court sentenced defendant to five years' probation, with 90 days to be served in jail, but with credit for 49 days served and deferral of the additional jail time. The trial court denied defendant's motion for a new trial after conducting an evidentiary hearing. Defendant appeals as of right. We affirm defendant's conviction, but remand for correction of the judgment of sentence.[1]

Defendant was convicted of assaulting the 13-year-old complainant during the afternoon of August 2, 2014, while she was alone at her mother's condominium. Defendant, a friend of the family, lived in a nearby unit in the same condominium complex. According to the complainant, while she was alone in her home and sitting on the couch in the living room, defendant entered the home through a rear sliding door and attempted to remove her pants. She kicked him in the groin area and he left the residence. The complainant did not report the incident at the time, but she told a counselor about six months later, which led to her parents learning about the incident and filing

---

[1] The judgment of sentence continues to list both counts, but it does not indicate that defendant was convicted of the assault with intent to commit CSC-II count, or that he was acquitted of the home-invasion count. In addition, the judgment erroneously lists the sentence date next to the judge's signature as "6-15-15" instead of "6-15-17." We remand for correction of these clerical errors.

a police report. The defense theory at trial was that the incident never occurred, that the complainant had a reputation for not being truthful, and that the incident could not have occurred as the complainant described because of defendant's physical limitations.

After his conviction, defendant moved for a new trial on the ground that trial counsel was ineffective for not presenting an alibi defense and for not calling other witnesses. After conducting an evidentiary hearing, the trial court denied defendant's motion.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial due to ineffective assistance of counsel. On appeal, he raises ineffective-assistance claims that were raised in his motion for a new trial, as well as additional claims that were not raised below. We will address the claims that defendant raised in his motion for a new trial in Part A of this section, and will address defendant's additional claims in Part B of this section.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc,* 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error. *Id.* Whether the facts as found by the trial court establish a violation of defendant's right to the effective assistance of counsel is a question of constitutional law, which we review de novo. *Id.* With respect to those claims that were not raised below, our review is limited to errors apparent from the record. *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004).

To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied his right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show that there is a reasonable probability that, but for his counsel's error, the result of the proceeding would have been different. *People v Johnson,* 451 Mich 115, 124; 545 NW2d 637 (1996). The burden is on defendant to produce factual support for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

It is counsel's duty to make an independent examination of the facts, laws, pleadings, and circumstances involved in the matter and to pursue all leads relevant to the issues. *People v Grant,* 470 Mich 477, 486-487; 684 NW2d 686 (2004). Failure to conduct a reasonable investigation can constitute ineffective assistance of counsel. *People v McGhee,* 268 Mich App 600, 626; 709 NW2d 595 (2005). A sound trial strategy is one based on investigation and supported by reasonable professional judgments. *Grant,* 470 Mich at 486-487. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Counsel will only be found ineffective because of a strategy decision if the strategy employed was not sound or reasonable. *People v Cline,* 276 Mich App 634, 637; 741 NW2d 563 (2007).

Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. *Davis*, 250 Mich App at 368. Counsel's failure to a call a witness is considered ineffective assistance only if it deprives the defendant of a substantial defense. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). A substantial defense is one that could have affected the outcome of the trial. *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994).

## A. ISSUES RAISED IN DEFENDANT'S MOTION FOR A NEW TRIAL

## 1. ALIBI DEFENSE

Defendant argues that the trial court erred by determining that defense counsel was not ineffective for failing to present an alibi defense. We disagree.

The record reveals that defendant and defense counsel discussed a potential alibi defense before trial. They discussed a defense that would have been predicated on either defendant being at an auto repair shop or defendant doing volunteer work at his church at the time of the alleged offense. There initially was some confusion whether the offense was alleged to have been committed on August 1 or August 2, 2014. However, the complainant consistently maintained that it was committed on the first Saturday in August, which would have been August 2. The complainant agreed that the offense was committed at approximately 1:00 p.m. that afternoon. Defendant presented defense counsel with information and documentation for two different alibis on that date. He presented an auto repair shop invoice dated August 2 and maintained that he remained at the auto repair shop from approximately 10:30 a.m. to 3:30 p.m. while his vehicle was being repaired. However, he also told counsel that he spent the day at his church doing volunteer work and he presented documentation in support of that claim. The trial court found that defendant presented defense counsel with multiple alibi claims that were incompatible, and that defense counsel reasonably believed that defendant was "attempting to engage in a fraud on the Court in presenting false alibi testimony." Under these circumstances, the court concluded that "it was reasonable for [defense counsel] to refuse to present any evidence regarding Defendant's conflicting alibis."

On appeal, defendant argues that defense counsel was ineffective for not presenting an alibi defense founded on the repair shop invoice. As defendant observes, the invoice is dated August 2, and the repair shop owner testified at the evidentiary hearing that defendant arrived at the shop at approximately 10:30 a.m. and remained there until approximately 3:30 p.m. when the repairs were completed. Although this evidence would have supported an alibi defense, defense counsel was also presented with two conflicting alibis. Defendant also presented documentation indicating that he was doing volunteer work at his church on the date of the alleged offense. That documentation included a letter that merely stated that defendant volunteered at the church on Saturdays in 2014, but without specifying any dates or times. Defendant also presented a timecard, which indicated that defendant worked from 10:17 until 11:17 on August 2. Apart from the fact that the timecard would not have provided an alibi for that afternoon, it conflicted with defendant's claim that he was at the auto repair shop from approximately 10:30 a.m. until 3:30 p.m. that day. In addition, defense counsel explained that when he investigated the church documentation, he was informed that the church would not have sent the letter that defendant produced, and that the church did not use the type of timecard that defendant produced.

Defense counsel testified that it was his belief that defendant had falsified the documentary evidence to fabricate an alibi defense, and he told defendant that he would not be involved in perpetrating any fraud on the court. According to counsel, after many argumentative discussions, during which they discussed whether defendant wanted another attorney to represent him, defendant insisted that he wanted defense counsel to continue to represent him, and defendant ultimately acknowledged and agreed that they would not present an alibi defense. The trial court found that defense counsel's testimony was credible and that it was reasonable for counsel to doubt the veracity of defendant's purported alibi defense, and therefore, not pursue that defense. We defer to the trial court's superior position to judge the witnesses' credibility.

Defendant argues that if defense counsel truly believed that defendant was trying to perpetrate a fraud, he should have withdrawn from the case. Defendant suggests that the fact that counsel did not withdraw undermines the credibility of his testimony. However, counsel explained that he had several discussions with defendant regarding whether defendant should obtain new representation, but defendant wanted counsel to continue representing him despite counsel's unwillingness to present an alibi defense, and defendant ultimately agreed to forgo an alibi defense. The trial court found this explanation credible. Under these circumstances, it was appropriate for counsel to continue representing defendant and there was no reason to withdraw.

In sum, the trial court did not clearly err by finding that defense counsel reasonably declined to pursue an alibi defense.

## 2. ADDITIONAL WITNESSES

Defendant also argues that defense counsel was ineffective for not calling additional witnesses who could have testified that, approximately a month after the alleged offense, the complainant was present at the condominium complex's swimming pool while defendant was overseeing the pool area. Defendant argues that this testimony could have impeached the complainant's testimony that she was fearful of defendant after the offense. Defense counsel explained, in part, that he did not believe these witnesses would have offered admissible testimony. The trial court found that counsel's failure to call the witnesses did not constitute ineffective assistance of counsel because it likely would have excluded their testimony and, in any event, there was not a reasonable probability that the testimony would have produced a different result.

It is difficult to determine whether the witnesses' testimony would have been admissible because the substance of their testimony is not known. Defendant had the burden of presenting factual support for his claim of ineffective assistance of counsel. *Hoag*, 460 Mich at 6. Defendant did not call the witnesses in question at the evidentiary hearing or otherwise present an offer of proof showing the substance of their testimony. Accordingly, we are left without an adequate factual record for determining whether their testimony would have been admissible, or for determining whether the failure to call the witnesses deprived defendant of a substantial defense.

Regardless, defense counsel also explained that he did not want to introduce evidence related to the complainant's presence at the pool while defendant was there because it would have opened the door to testimony involving defendant's role in caring for the pool. A substantial portion of the defense strategy was to show that defendant had physical limitations that significantly limited his activities and would have precluded him from committing the offense in

the manner described by the complainant. Counsel explained that calling the witnesses would have risked opening the door to testimony about defendant's responsibilities in caring for the pool, which could have undermined the defense theory that defendant's physical limitations prevented him from doing what the complainant described. Defendant has not overcome the presumption that counsel reasonably declined to call these witnesses as a matter of trial strategy.

### 3. JURY INSTRUCTIONS

Defendant also argues that defense counsel was ineffective for not timely objecting to the trial court's jury's instructions. As discussed in Section II, *infra*, the trial court's jury instructions were not improper. Because any objection would have been futile, and counsel is not required to make a futile objection, defense counsel was not ineffective for failing to object. *People v Green*, 322 Mich App 676, 687; 913 NW2d 385 (2018).

### 4. DATE DISCREPANCY

Defendant again argues that defense counsel was ineffective for not proceeding with an alibi defense based on the auto shop invoice after it became apparent that August 2, not August 1, was the date on which the offense allegedly was committed. As discussed earlier, however, although counsel was initially mistaken about the date, counsel had legitimate reasons for doubting the veracity of defendant's alibi claims for August 2 because defendant presented conflicting alibis, including documentation that he was doing volunteer work at his church on that date, which would have conflicted with the auto repair shop alibi, and counsel's investigation raised questions regarding the veracity of the documentation submitted by defendant. In addition, according to counsel, after he confronted defendant with the problems with the alibis, defendant ultimately agreed to forgo an alibi defense. Therefore, the date discrepancy does not compel a different result.

### B. ADDITIONAL INEFFECTIVE-ASSISTANCE CLAIMS

Defendant argues that defense counsel was ineffective for not objecting to hearsay testimony from the complainant's father and from the officer in charge. We disagree. Hearsay is an out-of-court statement offered at trial to prove the truth of the matter asserted therein. MRE 801(c).

Defendant challenges the testimony of the complainant's father, who stated that after the complainant attended a counseling session, the complainant's counselor told him what the complainant had reported during the session and then told the complainant's father that he needed to report the matter to the police. However, the complainant's father did not reveal what the counselor told him regarding the complainant's allegations. Further, to the extent that the testimony suggested that the counselor told the complainant's father about the nature of the complainant's allegations, this testimony was not offered to prove the truth of the allegations. It was offered only to explain why the complainant's father took the next step of making a police report. Therefore, the testimony was not inadmissible hearsay. Because any hearsay objection would have been futile, defense counsel was not ineffective for failing to object on that basis. *Green*, 322 Mich App at 687.

Defendant also argues defense counsel was ineffective for failing to object to hearsay testimony by Detective Milke. While discussing the history of this case, Detective Milke recalled that an initial report was made on February 13 and the case was assigned to him the following week. He recounted that the initial report was made at the front desk and involved "allegations of a home invasion . . . with a potential of an assault involving a juvenile victim." Detective Milke did not provide any details about the information in the initial report, including whether there was a possible sexual assault. Defendant suggests that Detective Milke relied on this initial report to conclude that the complainant's allegations were credible because they remained consistent. While Detective Milke confirmed that the complainant was consistent when he spoke to her, he did not base that opinion on the initial report to the front desk. Because this testimony appeared to be offered to show the procedural history of the case, and not to prove the truth of the allegations reported at the front desk, defendant has not shown that the testimony was inadmissible hearsay. As such, defense counsel was not ineffective for failing to object to this testimony.

Defendant also argues that defense counsel was ineffective for not objecting to the prosecutor's remarks during closing arguments. The challenged comments are discussed in Section III, *infra*. As explained in that section, the prosecutor's arguments for the most part were not improper; and therefore, an objection would have been futile. *Green*, 322 Mich App at 687. Moreover, to the extent that any of the remarks could be viewed as improper, the trial court's jury instructions were sufficient to cure any perceived prejudice and protect defendant's right to a fair trial. Therefore, defendant cannot establish that he was prejudiced by counsel's failure to object.

## II. JURY INSTRUCTIONS

Defendant argues that reversal is required because the trial court gave an erroneous supplemental jury instruction after the jury began deliberations. He also argues that the court erroneously instructed the jury regarding the date of the offense. Only the latter claim was preserved with an appropriate objection at trial. This Court reviews a preserved claim of instructional error involving a question of law de novo, but reviews the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion. *People v Craft*, 325 Mich App 598, 604; 927 NW2d 708 (2018). Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"Instructions are read as a whole rather than extracted piecemeal to determine whether error requiring reversal occurred." *McGhee,* 268 Mich App at 606. "Jury instructions must clearly present the case and the applicable law to the jury." *Id.* This Court "will not reverse where the jury instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012) (quotations and citation omitted).

After the jury began deliberations, it sent a note to the court asking, "If we cannot arrive at a unanimous verdict, what do we do?" The court responded by giving the following instructions:

> You must have a unanimous verdict. There is no other options [sic] in criminal trials. I'm going to ask you to please return to the jury room and resume your deliberations in the hope that further discussions will help you be able to

render a verdict. As you deliberate, please keep in mind the guidelines I gave you earlier. Of course, you all have that large packet of jury instructions.

Remember, it is your duty to consult with your fellow jurors and try to reach an agreement, if you can do so without violating your own judgement. To return a verdict again, you must all agree and it must represent your own individual judgement. As you deliberate, you should carefully and seriously consider the views of your fellow jurors, talk things over in a spirit of fairness and frankness. Obviously, there will be some differences of opinion and you should not only express your opinion, but also give the facts and the reasons for why you have that opinion and sometimes by reasoning the matter out, jurors can often reach some agreement. If you think it would be helpful again, you could submit questions that maybe you're hung up on that I can give you some legal direction. And, again, write a note and give it to my court officer, if you do. When you continue in your deliberations, do not hesitate to re-think your own views, and change your opinion if you decide you were wrong. However, none of you should give up your honest beliefs about the weight and effect of the evidence only because of what your fellow jurors think or for the sake of reaching agreement.

So, ultimately, go back and talk about what your differences are and sometimes giving the reasons for the facts for them will give you an opportunity to discuss them a little bit more in depth. With that, I'm asking you please go back to the jury room, see what you can workout [sic].

The trial court's instructions generally followed the standard instruction in M Crim JI 3.12 for deadlocked juries. The only deviation involved the added language at the beginning of the instruction that the jury "must have a unanimous verdict" and that "[t]here [are] no other options in criminal trials." Part of this language is based on M Crim JI 3.11(3), which provides that "[a] verdict in a criminal case must be unanimous."

Although defendant argues that the trial court erred by failing to instruct the jury on the option of a mistrial if the jury is unable to reach a verdict, that is an option for the trial court, not a jury. Further, viewed in context, the court's statement that "[t]here is no other options in criminal trials" relates to the requirement of unanimity. It is well-settled that a verdict in a criminal case must be unanimous. Indeed, that requirement is specified in M Crim JI 3.11(3), which was given to the jury. The jury did not have the option of returning a verdict that was not unanimous. A jury should be made aware of its obligation to make an effort to reach a verdict, if it can, which is exactly what the court's supplemental instructions addressed. Viewing the court's supplemental instructions in their entirety, the court properly advised the jury to continue deliberating "in the hope that further discussions will help you be able to render a verdict," but it also made clear that the jury could ask additional questions if it thought that further direction was necessary, and that individual jurors should not set aside their honest beliefs only for the sake of reaching agreement. There is no basis for believing that the court's instructions caused juror confusion or caused the jury to reach a compromised verdict. Accordingly, defendant has not shown that the trial court's supplemental instructions were improper.

Defendant also argues that the trial court erred when, in its instructions on the elements of assault with intent to commit CSC-II, it added at the end that "[t]he prosecutor must also prove beyond a reasonable doubt that [this] crime occurred on or about August 1, 2014 within Macomb County." Defendant argues that this instruction was erroneous, and likely confused the jury, because the testimony at trial established the date of the offense as being August 2, 2014.

Although we agree that the testimony at trial indicated that the offense was committed on August 2, there was also testimony that the detective mistakenly identified the date of the offense as August 1 in his report. The information alleged that the offense was committed "on or about August 1." Thus, it was appropriate for the jury to consider the August 1 date. Further, we disagree with defendant's argument that the court's instruction was confusing. The court instructed the jury, consistent with the information, that the prosecution was required to prove that the offense "occurred *on or about* August 1, 2014." The jury could reasonably find that this instruction encompassed the August 2 date identified in the testimony at trial. Moreover, the reason for the discrepancy between the two dates was clearly explained to the jury. There is no basis for concluding that this instruction was the reason the jury initially was unable to reach a verdict or caused the jury to reach a compromised verdict. Therefore, we reject this claim of error.

### III. PROSECUTORIAL MISCONDUCT

Defendant also argues that improper remarks by the prosecutor during closing argument denied him a fair trial. Defendant concedes that there was no objection to the challenged remarks at trial, and therefore, his claims of misconduct are unpreserved. Review of an unpreserved claim of prosecutorial misconduct "is limited to whether plain error affecting substantial rights occurred." *People v Abraham,* 256 Mich App 265, 274; 662 NW2d 836 (2003). This Court will not reverse if the prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction from the trial court. *People v Williams,* 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

Claims of prosecutorial misconduct are decided case by case and the challenged conduct must be viewed in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995).

A prosecutor is afforded great latitude during closing argument. A prosecutor may not make a statement of fact that is unsupported by the evidence, but he is permitted to argue the evidence and reasonable inferences arising from the evidence in support of his theory of the case. *Bahoda,* 448 Mich at 282; *People v Ackerman,* 257 Mich App 434, 450; 669 NW2d 818 (2003). The prosecutor must refrain from making prejudicial remarks, but a prosecutor is not required to phrase his or her arguments in the blandest of terms; rather, the prosecutor may use "hard language" when the evidence supports it. *Bahoda,* 448 Mich at 282-283; *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). It is improper for a prosecutor to express personal knowledge or a personal belief regarding the credibility of a witness, or to vouch for the credibility of a witness by implying some special knowledge about the witness's truthfulness. *Bahoda,* 448 Mich at 276; *People v Meissner,* 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas,* 260 Mich App 450, 455; 678 NW2d 631 (2004). But a prosecutor may comment on a witness's credibility and argue from the evidence that a witness is credible. *Id.*

Defendant argues that the prosecutor improperly appealed to the jurors to sympathize for the complainant when she argued that the complainant's personal and family circumstances made her particularly vulnerable and that defendant "preyed on that vulnerability." A prosecutor may not appeal to the jury to sympathize with the victim. *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008). The prosecutor's remarks were directed at the victim's circumstances, but they did not involve an obvious appeal for sympathy. To the extent that the remarks could have been perceived in that manner, the trial court's instruction to the jury that "you must not let sympathy or prejudice influence your decision" was sufficient to alleviate any prejudice and protect defendant's substantial rights.

Defendant further argues that the remarks were improper because there was no evidence that he knew that the complainant was in counseling because of her parents' relationship. However, the prosecutor's remarks addressed several factors that made the complainant vulnerable. Moreover, the prosecutor presented evidence that defendant was a neighbor and close family friend, it was defendant's position that the complainant was a friend of defendant's daughter, and there was evidence that defendant and the complainant frequently exchanged text messages. This evidence supported an inference that defendant was familiar with the complainant's personal and family circumstances that made her vulnerable, and that he was in a position to exploit those vulnerabilities. Accordingly, defendant has not shown that the remarks were improper because the evidence did not support them. Further, the trial court instructed the jury that "the lawyers' statements and arguments are not evidence" and it "should only accept the things that the lawyers say that are supported by the evidence and by your own common sense and general knowledge." These instructions were sufficient to protect defendant's substantial rights.

Defendant also argues that the prosecutor improperly bolstered the complainant's testimony by arguing that she consistently told the same account throughout the case. These remarks were supported by a police officer's testimony that the complainant's account remained consistent throughout her statement, as well as the testimony of her mother, a defense witness, who testified that the complainant told "exactly the same story every single time we brought it up." We agree, however, that the prosecutor referred to some occasions when the complainant repeated her allegations that were not a matter of evidence. However, an appropriate instruction upon timely objection could have cured any perceived prejudice in this regard. Moreover, even without an objection, the trial court's instructions that "the lawyers' statements and arguments are not evidence" and that the jury "should only accept the things that the lawyers say that are supported by the evidence" were sufficient to protect defendant's substantial rights. Accordingly, these remarks did not deny defendant a fair trial.

Defendant also argues that it was improper for the prosecutor to refer to him as a "predator." Although a prosecutor must refrain from using intemperate and prejudicial remarks to denigrate a defendant, a prosecutor may use "hard language" when the evidence supports it. *Bahoda,* 448 Mich at 282-283; *Ullah*, 216 Mich App at 678. The prosecutor's theory at trial was that it was the 52-year-old defendant, not his daughter, who exchanged the series of flirtatious and suggestive text messages with the 13-year-old complainant. The prosecutor's comment that defendant was a "sexual predator" was supported by the significant age difference between defendant and the complainant, the nature of the text messages that were sent from defendant's phone to the complainant's phone, and the complainant's testimony that defendant entered her

residence while she was alone and attempted to remove her pants.  Therefore, the remarks were not improper.

Affirmed, but remanded for correction of the judgment of sentence in accordance with this opinion.  We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Patrick M. Meter