*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LAWRENCE JAY THOMAS,

        Defendant-Appellant.

UNPUBLISHED
August 18, 2022

No. 354470
Wayne Circuit Court
LC No. 19-005326-01-FC

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony murder, MCL 750.316(1)(b); assault with intent to commit murder (AWIM), MCL 750.83; two counts of armed robbery, MCL 750.529; felon in possession of a firearm (felon-in-possession), MCL 750.224f; and five counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to life imprisonment for the first-degree felony murder conviction, 25 to 50 years' imprisonment for the AWIM conviction, 20 to 30 years' imprisonment for each armed robbery conviction, 2 to 10 years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for each felony-firearm conviction. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In 2018, Donovan Grady lived in Chicago, Illinois. Grady learned of defendant through a man who had been incarcerated with defendant in Michigan.[1] Grady and defendant communicated over FaceTime three to four times a month for five to six months. Grady referred to defendant as "Detroit" or "Yo." Despite never meeting in person, they apparently had discussions about doing business together.

---

[1] The parties stipulated that defendant had previously been convicted of a felony and was ineligible to carry a firearm.

On February 12, 2019, Grady drove with his longtime friend, Denzel Spencer, from Chicago, Illinois to the Detroit, Michigan area to purchase cell phones from a Sprint store in Howell, Michigan. Grady did not have a valid driver's license at the time, and Spencer drove Grady's vehicle, a Chevy Impala. While driving to Michigan, the two smoked their entire supply of marijuana. To obtain marijuana for the drive back to Chicago, Grady called defendant to purchase some. Defendant sent Grady an address of the location to meet. This location led the men to the parking lot of an apartment complex in Detroit, Michigan.

When the men arrived at the parking lot, defendant was in a silver Kia backed into a parking space. Spencer backed Grady's vehicle into the parking spot directly across from defendant's vehicle. Defendant approached Grady on the passenger side of the vehicle, pulled a gun from his pocket, and demanded Grady "give [him] everything." Spencer tried to drive away, but was shot by defendant and lost control of the car, crashing it into the front end of defendant's vehicle. Spencer sustained seven gunshot wounds and died in the vehicle. Defendant opened the passenger door, put the gun to Grady's stomach, and took the phones Grady and Spencer had purchased, as well as cash from Grady's pocket. Grady was shot in the hand, but ran from the vehicle to a nearby liquor store. The police briefly spoke with Grady at the liquor store, and he was taken to the hospital. After Grady was treated and released, the police interviewed him and he identified defendant as the shooter.

In order to leave the scene, defendant apparently had to move Grady's vehicle out of the way. He entered the driver's side, put the car in gear, and drove the vehicle in reverse. Defendant then returned to his own vehicle and drove off. This evidence was circumstantially corroborated by a video recorded by a witness, Loddie Weaver Stanton, from across the street. Defense counsel had no objection to the admission of this video,[2] and therefore, the foundation and chain of custody underlying the video was never established on the record. Although the video recording was not close enough to depict the individual's facial features, it showed a man exit a silver sport utility vehicle (SUV), enter the vehicle blocking the path of the silver SUV, and move it. The man then returned to the silver SUV and drove off. The police were able to correlate the telephone number that established the drug exchange and its location to defendant. Additionally, the silver SUV was rented by Crystal Edwards, defendant's girlfriend.[3]

At trial, defendant challenged the credibility of Grady's testimony. He attacked Grady's purpose in coming to Michigan, his possession of a notebook containing names, addresses, dates of birth, and Social Security numbers of Michigan residents, the legality of Grady's purchase of the cell phones, and his alleged failure to immediately identify defendant as the shooter to two officers that responded to the liquor store. Grady was questioned about why defendant would commit a robbery, but fail to check all of Grady's pockets for money and fail to take the laptop and jewelry in the backseat of the car. In closing argument, defense counsel submitted that Grady

---

[2] At the start of voir dire, counsel identified their possible witnesses. Defense counsel indicated that he may call Stanton as a witness; however, he subsequently rested without calling any witnesses.

[3] Before the police could analyze the silver SUV for external accidental damage or blood evidence in the interior, it was returned to the car rental company and leased to someone else.

lied about his purpose in coming to Michigan, and therefore, his testimony addressing the circumstances surrounding Spencer's death was also not credible. Defense counsel cited to Grady's testimony that defendant wore a ski mask, but it was rolled up and did not cover his face. Additionally, although defendant was purportedly wearing this ski mask on his head, Grady later described defendant's hairstyle. Defense counsel also attacked the contention that defendant was the shooter because the shooter entered Grady's vehicle to move it to clear the road and drive away, but defendant's deoxyribonucleic acid (DNA) was not found in the interior of the vehicle. Despite defendant's challenge to the inconsistencies in and credibility of Grady's testimony and the contention that the prosecutor did not meet the burden of proof, the jury convicted defendant of all charges. Moreover, the successor trial court judge denied defendant's motion for judgment notwithstanding the verdict or new trial premised on the lack of defendant's DNA evidence inside Grady's vehicle. Defendant appeals.

## II. ADMISSION OF VIDEO EVIDENCE

Defendant asserts the trial court erred when it admitted Stanton's video recording as evidence because it was not properly authenticated under MRE 901, and the witness presenting the video had insufficient personal knowledge under MRE 602. Because defendant waived review of this issue, he is not entitled to appellate relief.

Waiver is the intentional relinquishment of a known right. *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (citation omitted). When counsel affirmatively expresses satisfaction with the trial court's action, the claim of error addressing the trial court's action is waived. See *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009).

When questioning the investigating detective, the prosecutor began the process of establishing the foundation for admission of the video recorded by Stanton by addressing how it was obtained. Defense counsel interrupted the prosecutor's inquiry by advising that there was, "[n]o objection to its admission or viewing." Consequently, the prosecutor did not present evidence eliciting the foundation for the video, personal knowledge of the contents of the video, and the chain of custody demonstrating untampered police acquisition of the video. By expressly approving the admission of the video without requiring compliance with MRE 901 or MRE 602, defendant waived appellate review of these challenges. See *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011). Accordingly, we reject defendant's appellate challenges to the admission of the video. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019) ("A defendant waives an issue by expressly approving of the trial court's action.").

## III. *BRADY* VIOLATION CLAIM

Next, defendant contends his due process rights under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 215 (1963), were violated because the police failed to provide a report referencing Stanton's eyewitness statement. We disagree.

Generally, "[t]his Court reviews due process claims, such as allegations of a *Brady* violation, de novo." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016). However, because defendant did not preserve this issue in the trial court, our review is for plain error affecting substantial rights. *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020).

The prosecution's suppression of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment regardless of whether the prosecutor acted in good or bad faith. *Id*. at 516-517. To demonstrate a *Brady* violation, "a defendant must establish that (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Id*. at 517 (citation omitted). Evidence that is exculpatory or impeaching is considered favorable to the defense. *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). As to the third prong, "[t]o establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*.

Defendant contends a *Brady* violation occurred when defendant's trial counsel was not provided a police report written by Detroit Police Officer Gibron Lockhart containing Stanton's witness statement. But, as noted by the prosecution, there is no indication that the documentation was not provided to the defense.[4] On the contrary, there is record evidence that defense counsel was well aware of Stanton's statement to the police. At the commencement of jury selection, defense counsel noted that he may call Stanton as a witness. And Stanton's 911 call was played for the jury. Furthermore, defense counsel cross-examined Lockhart about the content of his police report which referenced Stanton's statement. Thus, defendant cannot show the prosecution failed to turn over Lockhart's report, which included Stanton's witness statement.

Additionally, although defendant submitted that Stanton's witness statement was exculpatory and presented the only eyewitness account[5] of the shooting, this defense characterization does not comport with the record evidence. Rather, it was Grady that provided the only eyewitness account of the shooting of himself as well as Spencer. Stanton only began to record activity across the street *after* she heard the gunfire. Thus, Stanton's video provided circumstantial evidence that the shooter needed to move Grady's vehicle to flee the scene. And Lockhart's report, containing Stanton's statement, did not amount to material evidence that was favorable to defendant. Under the circumstances, defendant failed to demonstrate plain error affecting his substantial rights. *Burger*, 331 Mich App at 516.

---

[4] Defendant did not submit an affidavit from trial counsel or otherwise demonstrate that the prosecutor failed to disclose the police report delineating Stanton's statement, but merely concludes that it was not provided.

[5] When discussing the issue of ineffective assistance, defendant does acknowledge that Grady was a surviving witness.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Finally, defendant contends that retained trial counsel was ineffective for failing to investigate Stanton's statement to responding officers, for failing to require authentication of Stanton's video recording, for failing to object to the admission of the photographic lineup shown to Grady, and for failing to raise an exculpatory DNA defense. We disagree.

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews a trial court's factual findings for clear error and its conclusions of law de novo. *Miller*, 326 Mich App at 726. When no *Ginther*[6] hearing addressing an issue is held in the trial court, appellate review is limited to mistakes apparent on the record. *Id*. Thus, this unpreserved claim of ineffective assistance of counsel is reviewed for errors present on the record. *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011) (citation omitted).

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *People v Schrauben*, 314 Mich App 181, 189-190; 886 NW2d 173 (2016). To obtain a new trial premised on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). It is presumed that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). However, counsel may be found ineffective for the strategy employed when it is not a sound or reasonable strategy. *People v Dalessandro*, 165 Mich App 569, 577-578; 419 NW2d 609 (1988). The burden of establishing the factual predicate for a claim of ineffective assistance is on the defendant. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant alleges trial counsel was ineffective for failing to investigate Stanton as the only eyewitness to the incident other than Grady. "When making a claim of defense counsel's unpreparedness, a defendant is required to show prejudice resulting from the alleged lack of preparation." *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). Defendant failed to demonstrate that there was a lack of investigation into Stanton as a witness and that any prejudice resulted from a lack of preparation. At the commencement of trial, defense counsel demonstrated that he was aware of Stanton's involvement because he represented to the jury pool that he may call her as a witness. Moreover, Stanton was identified in the police reports as a witness, and her 911 call was played for the jury. Defendant failed to demonstrate the factual

---

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

This Court denied defendant's earlier motion for remand. *People v Thomas*, unpublished order of the Court of Appeals, entered November 17, 2021 (Docket No. 354470).

predicate for his claim that trial counsel failed to investigate Stanton in light of the record evidence to the contrary. *Hoag*, 460 Mich at 6.

Further, it is apparent that trial counsel's strategy was to question the identification of defendant and the credibility of the prosecution's main eyewitness, Grady. A review of the video recorded by Stanton and her witness statement indicated that she provided circumstantial evidence that corroborated Grady's account of the flight following the shooting because she began to record after hearing gunfire. Thus, Stanton could not provide any exculpatory evidence because her video recording of the perpetrator was from a distance and did not record identifying features. Accordingly, further investigation of Stanton would not have aided the defense and failed to support a claim of ineffective assistance.

Defendant next contends trial counsel was ineffective for failing to object to the admission of Stanton's video. In his brief on appeal, defendant merely restates his argument that the video should not have been admitted because of the lack of foundation and personal knowledge by the investigating detective, but fails to demonstrate how a failure to object to the video constituted ineffective assistance. Trial counsel's failure to object was not objectively unreasonable because the video did not contain any evidence to identify defendant. While the video gives context to the conditions of the parking lot on the night of the incident, it does not contain any inculpatory evidence regarding defendant's identity.

Defendant next argues trial counsel was ineffective for failing to object to the photographic lineup in which Grady identified defendant as the perpetrator and this failure denied defendant of "a possible solid defense to [d]efendant's involvement in the incident." An identification procedure is improper when it is "impermissibly suggestive." *People v Craft*, 325 Mich App 598, 609; 927 NW2d 708 (2018). Defendant does not present any legal or factual argument regarding how this lineup could be deemed improper, only stating "[t]he circumstances surrounding the processing of the lineup are highly unusual." Because there is no evidence to show the lineup procedure was improper,[7] *Hoag*, 460 Mich at 6, any objection to introduction of the lineup would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Savage*, 327 Mich App 604, 617; 935 NW2d 69 (2019) (quotation marks and citation omitted).

Further, there was no evidence that objection to the photographic lineup would have a reasonable probability of the trial resulting in a different outcome. Grady, as the prosecution's main witness, stated he was able to identify defendant even without the lineup because he knew defendant before the incident, and could recognize defendant's face because they had been communicating over FaceTime. Defense counsel himself recognized Grady's independent basis for being able to identify defendant at trial, and even earlier during the preliminary examination.

Finally, defendant submits that trial counsel was ineffective for failing to present a defense on the basis of exculpatory DNA evidence. Although trial counsel's decision to "forgo particular investigations relevant to the defense" can constitute ineffective assistance of counsel, that is not the case here. *Trakhtenberg*, 493 Mich at 53. Contrary to defendant's argument, trial counsel did

---

[7] The six photographs included in the lineup were admitted during trial.

use the lack of DNA to support his defense, emphasizing in his closing argument that the DNA report did not support defendant's presence at the scene that night. Likewise, defendant was not prejudiced by the performance of his trial counsel in regards to the DNA evidence. The jury was given the opportunity to consider the lack of defendant's DNA at the scene, and weigh this evidence against Grady's identification of defendant.

Assuming trial counsel's professional judgment was deficient in this case, which it was not, defendant raises no legitimate arguments that "but for counsel's deficient performance, a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 56 (quotation marks and citation omitted). In addition to Grady's identification of defendant as the robber and shooter, the telephone number associated with defendant was in contact with Grady, including via FaceTime, before the shooting. Defendant's cell phone number sent a map of the meeting location to Grady's phone. Stanton reported and recorded the shooting aftermath. The liquor store personnel also called 911 to report the shootings. Between Stanton's 911 call and videotape and the liquor store's 911 call and videotape, a short timeline was established. After the shooting, defendant's phone sent a message to his girlfriend and the vehicle that she had rented was similar in color and type to the one Stanton captured on video and reported in her call to 911. Defendant's cell phone records place him in the area of the shooting and the recovered shell casings were fired from the same firearm. Given the direct and strong circumstantial evidence of guilt presented at trial, defendant has not shown a reasonable probability of a different outcome, and his arguments that trial counsel was ineffective fail for this reason as well. *Vaughn*, 491 Mich at 669 (defendant bears the burden of establishing that counsel's performance was deficient and that he was prejudiced).

Affirmed.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

-7-