# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TORREY CRAFT,

Defendant-Appellant.

FOR PUBLICATION
August 16, 2018
9:00 a.m.

No. 337754
Wayne Circuit Court
LC No. 16-007995-01-FC

Before: SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

SWARTZLE, P. J.

It is not uncommon for a trial court to supplement its jury instructions during jury deliberations. In fact, our court rules specifically authorize supplemental instructions. Yet, what is not common is for a trial court to fail initially to give *any* instruction on two entire counts, and then to supplement with full instructions on those counts. While not common, such a circumstance is not unconstitutional if corrected before a jury returns its verdict, and a party is not barred from asking for supplemental instructions even if the party had earlier acquiesced to the original, incomplete instructions.

Concluding that the trial court did, in fact, timely correct its initial oversight and finding no other reversible error, we affirm.

## I. BACKGROUND

The events leading to defendant's convictions had as their origin a dispute between him and his girlfriend in the summer of 2016. During trial, Kevin Hollis testified that he witnessed the dispute and tried to intervene on the girlfriend's behalf. Defendant became angry at Hollis and expressed a desire to fight with him, but no fight ensued.

Instead, the next day, Hollis was playing catch outside with Calvin Arnold, Jr. and Arnold's stepsons, seven-year-old Amir and nine-year-old Antonio, while Bianca Primm, the boys' mother, watched. Hollis heard someone call his nickname (Bam) and say, "You still wanna[] fight?" and "You still talkin' that scrap shit?" Hollis testified that he recognized defendant and noticed that another man was with defendant, though he could not identify him because his face was covered. Hollis saw defendant produce a rifle and shoot one round toward him. Instead of hitting Hollis, the bullet struck Amir. Defendant and the other man then ran to a

-1-

waiting vehicle—a "gold, or beige, [or] silver" Trailblazer, according to Hollis—and drove away. Amir was taken to the hospital and underwent several surgeries, eventually recovering from his injuries.

Hollis, who had known defendant for over three years, gave defendant's name to the police and later identified him from a photograph. Police officers went to defendant's last-known address and observed defendant parking a silver Trailblazer. The officers attempted to stop defendant, but he fled in the vehicle and escaped by ditching the vehicle and continuing his flight on foot. Shortly thereafter, officers caught up with defendant and took him into custody.

While in custody, and within two days of the shooting, defendant participated in a live, six-man lineup. Defendant was assigned legal counsel for purposes of the lineup, and his counsel did not object to any portion of the lineup. After viewing the assembled men, both Arnold and Primm identified defendant as the assailant. Defendant was charged with three counts of assault with intent to commit murder, MCL 750.83; one count of carrying a dangerous weapon with unlawful intent (carrying with intent), MCL 750.226; and one count of possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b.

Defendant's trial counsel moved to suppress the lineup identification. Defense counsel argued that, notwithstanding the lack of objection by the lineup counsel, the lineup was impermissibly suggestive because: (1) defendant was shorter and smaller than the other men; (2) he had a lighter complexion than the others; and (3) he was one of only two men who wore an orange jumpsuit. Defense counsel requested an expanded evidentiary hearing so that he could present testimony from the lineup counsel, Arnold, Primm, and four detectives. This type of hearing is commonly referred to as a *Wade* hearing, referencing the federal Supreme Court's decision in *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

The trial court held an evidentiary hearing, but limited the scope to testimony from the lineup counsel. After hearing the testimony, reviewing a photograph of the lineup, and considering argument from counsel, the trial court held that defendant had not overcome the presumption that the lineup was valid. Referring to the lineup photograph, the trial court noted "that [there] wasn't anything that was significantly off" and that, while there were some physical differences among the lineup participants, "[t]here are height differences that are allowed, and clothing." The trial court concluded, "I cannot find, as a matter of law, that there was anything impermissibly suggestive as to give rise to a substantial likelihood of misidentification."

The trial proceeded before a jury. During trial, Arnold, Primm, and Hollis testified that defendant was the person who shot Amir. Although Arnold testified that he had seen defendant's name on television following the lineup, both Arnold and Primm testified that their identification of defendant was based on their memory of his face at the time of the shooting, rather than any other outside influence. Arnold was asked whether defendant's attire during the lineup factored into his identification, and Arnold denied that it had.

At the close of proofs, the trial court prepared to instruct the jury. Both the prosecutor and defense counsel approved the proposed instructions, although no one appears to have noticed that there were no instructions for the two firearm-related counts, carrying with intent and felony firearm. Shortly after the jury began deliberating, it asked the trial court in writing, "There are 5

counts only 3 are in the back of the binder. We thought the last two were dropped. Are we voting on all 5? The verdict form has 5." Recognizing its error, the trial court asked counsel to research whether it could provide instructions to the jury on the omitted counts or, instead, it had to dismiss those counts. After hearing argument, the trial court determined that it could provide the omitted instructions, and the trial court proceeded to reinstruct the jury, this time on all five counts. The jury eventually returned a verdict of guilty on two counts of assault with intent to do great bodily harm less than murder, MCL 750.84 (a lesser-included offense to assault with intent to commit murder), as well as on the two firearm-related counts.

This appeal followed.

## II. ANALYSIS

Defendant makes two claims on appeal. First, he asserts that the trial court committed a structural constitutional error by instructing the jury on the two omitted counts. Second, he argues that the trial court reversibly erred when it narrowed the *Wade* hearing and held that the lineup was not impermissibly suggestive. We consider each claim in turn.

### A. SUPPLEMENTING THE JURY INSTRUCTIONS

Defendant's first claim centers on how the trial court instructed the jury. "We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017) (cleaned up).[1] An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Id.* at 516. Our court rules authorize a trial court to supplement its original instructions to the jury, and we review interpretation of these rules de novo. *People v Lacalamita*, 286 Mich App 467, 472; 780 NW2d 311 (2009).

Defendant maintains that the trial court lacked authority to supplement its earlier jury instructions with instructions on the two omitted counts. By agreeing to the original instructions, the prosecutor waived any subsequent argument that the original instructions were somehow lacking or deficient, according to defendant. And by agreeing with the prosecutor and supplementing its earlier instructions, the trial court committed an instructional error, which, according to defendant, is a structural constitutional error requiring reversal and a new trial. We reject both contentions.

*Waiver Is an Appellate Matter.* In acquiescing to the original, incomplete instructions, defendant argues that the prosecutor thereby waived the ability subsequently to take the position before the trial court that supplemental instructions were needed. This argument misreads our

---

[1] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that non-substantive clutter such as brackets, internal quotation marks, alterations, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

waiver jurisprudence. Defendant cites as support MCR 2.512(C), which provides in part that "[a] party may assign as error the giving of or the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict." Yet, the "assign as error . . . only if" provision in the court rule does not act as a bar to proceedings in the trial court, but rather as a restriction on appeal. See *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). If a party fails to object to the trial court's instructions, then the party has failed to preserve the objection for *appellate* review. *Id.* The court rule says nothing about whether, during trial court proceedings, a party can alter its position on the appropriateness of jury instructions when a question is subsequently raised.

Defendant's reliance on our Supreme Court's decision in *People v Carter*, 462 Mich 206; 612 NW2d 144 (2000) is similarly unconvincing. The *Carter* decision involved the distinction between waiving and forfeiting an issue in trial court proceedings and how that waiver or forfeiture, as the case may be, would affect appellate review of that issue. See *id.* at 214-216. The decision did not involve the position that defendant asserts here, i.e., that by agreeing to the trial court's original instructions, the prosecutor waived any argument in *the trial court proceedings* that *the trial court* could supplement its own instructions. Defendant's other waiver-based authority is similarly unavailing. See, e.g., *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 224; 755 NW2d 686 (2008) (concluding that a party's expression of satisfaction with the trial court's instructions constitute a waiver that precludes appellate review). Thus, the prosecutor did not waive nor was she otherwise estopped from arguing in favor of the supplemental instructions simply because she acquiesced to the original ones.

*The Trial Court Averted a Structural Constitutional Error.* Defendant next argues that the trial court erred by supplementing its original instructions with instructions on the two omitted counts, and, by doing so, the trial court committed structural constitutional error. While not entirely clear, it appears that defendant's argument is four-fold: (1) the trial court was purportedly barred from providing supplemental instructions on the two counts; (2) had the trial court not supplemented its instructions on the two counts, the jury would have been left with a complete lack of instruction on those counts; (3) any conviction on the hypothetically "uninstructed" counts would have been a structural constitutional error requiring automatic reversal; and (4) because the trial court should not have instructed on those counts, this Court should treat the trial court's supplemental instructions and the jury's subsequent convictions on the two counts as a structural constitutional error. While creative, the argument is ultimately unavailing.

One of the essential roles of the trial court is to present "the case to the jury and to instruct it on the applicable law" with instructions that include "all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). Our court rules reflect that a trial court's initial jury instructions are not necessarily written in stone and that the instructions may need to be supplemented. Specifically, MCR 2.512(B)(1) provides: "At any time during the trial, the court may, with or without request, instruct the jury on a point of law if the instruction will materially aid the jury in understanding the proceedings and arriving at a just verdict." MCR 2.513(N)(1) further states: "After jury deliberations begin, the court may give additional instructions that are appropriate." Thus, the court rules give the trial court broad authority to carry out its duty to instruct the jury properly, and this authority extends to

instructing the jury even during deliberations. There is nothing in the court rules that preclude the trial court from supplementing its original instructions with instructions for an entire count, nor is there anything in the rules to suggest that a party's acquiescence to the original instructions somehow acts as a bar to the trial court supplementing its instructions. Indeed, our court rules are intended to give trial courts the appropriate tools to avoid errors in the first place, and correct them in the second place. See *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 52-53; 698 NW2d 900 (2005) (noting that "a trial court has unrestricted discretion to review its previous decision" absent an appellate court's prior holding to the contrary).

As for defendant's argument that the trial court committed a structural constitutional error by instructing the jury on the two counts, we conclude just the opposite—with its supplemental instructions, the trial court did not commit a structural constitutional error, but rather *averted* one. It was clear from the outset that defendant was being tried on five criminal counts. This was highlighted in the verdict form, which indicated that the jury had to render verdicts on three separate counts of assault with intent to commit murder, one count of carrying with intent, and one count of felony firearm. Yet, when the jury reviewed the written instructions, it could not find anything covering the latter two counts. It therefore asked the trial court for guidance concerning their deliberations on the latter two counts: Was it to presume those counts had been dismissed or was the omission unintentional?

In response, the trial court concluded that it was appropriate to reinstruct the jury by re-reading all of the instructions it had previously given and adding the specific instructions for the two omitted offenses. The supplemental instructions were "responsive to the jury's request and did not serve to mislead the jury in any manner." *People v Katt*, 248 Mich App 282, 311; 639 NW2d 815 (2001). In fact, the trial court could have chosen to give only the instructions on the two omitted offenses, but rather it chose to reinstruct the jury on all of the charges to avoid any prejudice that may result from piecemeal consideration. *Id*. Had the jury returned a guilty verdict on either of the two counts without the additional instructions, the omission would have been a structural error likely warranting reversal. *People v Duncan*, 462 Mich 47, 48; 610 NW2d 551 (2000); cf *People v Traver*, __ Mich __; __ NW2d __ (2018) (Docket No. 154494); slip op at 13 n 7 (noting that it is an open question whether a defendant can waive appellate review of a structural error resulting from conviction on a charge for which there was a complete failure to instruct).

The trial court's decision to reinstruct the jury—one which was made after considerable input from the parties—was reasonably calculated to protect defendant's right to a properly instructed jury while avoiding the time and costs of a new trial. Given this, the trial court's decision was within the range of reasonable and principled outcomes and was not an abuse of its discretion.

## B. THE PRETRIAL LINEUP

Defendant also argues that Arnold and Primm's identifications of defendant should have been excluded at trial because the pretrial lineup was impermissibly suggestive. Defendant argues that the trial court should have granted his request for a *Wade* evidentiary hearing and that such a hearing would have confirmed the impropriety of the identification procedure.

While we review the trial court's decision whether to hold an evidentiary hearing for an abuse of discretion, *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008), the trial court's decision to admit or deny identification evidence is reviewed for clear error, *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. Defendant was represented by counsel at the pretrial lineup and therefore he "bears the burden of showing that the lineup was impermissibly suggestive." *People v McElhaney*, 215 Mich App 269, 286; 545 NW2d 18 (1996).

First, we conclude that defendant has not met his burden to show an entitlement to an expanded evidentiary hearing under *Wade*. The trial court did conduct an evidentiary hearing regarding the lineup, during which a photograph of the lineup was admitted as evidence and defendant's lineup counsel testified to her impression of the procedure. On appeal, defendant does not identify any other evidence that was necessary to a determination of the lineup's suggestibility. While defendant's motion before the trial court indicated that he wished to present testimony from Arnold and Primm, as well as four police detectives, both Arnold and Primm testified at trial, and, on appeal, defendant has not explained what testimony he wished to procure from the detectives. Defendant does not explain why the photograph and his lineup counsel's testimony were insufficient for the trial court to decide the issue, nor does defendant explain why the trial testimony of Arnold and Primm is insufficient for this Court to address the suggestibility of the lineup on appeal. Accordingly, we conclude that defendant was not entitled to an expanded evidentiary hearing when originally requested, nor is he now entitled to this hearing post-conviction. See *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009).

Second, we conclude that defendant has not shown that the identification was impermissibly suggestive. Defendant focuses on several factors that he insists rendered the identification procedure impermissibly suggestive. He claims that he was smaller than the other lineup participants, he was one of only two participants in an orange jail jumpsuit, and he had a lighter complexion than the other participants. "Physical differences among the lineup participants do not necessarily render the procedure defective and are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from the other lineup participants." *Hornsby*, 251 Mich App at 466. Generally, physical differences affect the weight of an identification, not its admissibility. *Id*.

Here, the physical differences were not so dramatic as to render the lineup impermissibly suggestive. Defendant has attached the "Showup & Photo Identification Record" from the lineup to his appellate brief. According to this form, defendant was 5' 6" tall and weighed 150 pounds. The other participants in the lineup were, respectively (#1) 5' 5" tall and 195 pounds; (#2) 6' tall and 180 pounds; (#3) 5' 9" tall and 150 pounds; (#4) 6' tall and 185 pounds; and (#5) 5' 9" tall and 135 pounds. While there was some variance between the heights and weights, it was not the type of variance that would make defendant stick out from the grouping. Indeed, defendant ranks somewhere in the lower-middle of the sample based on height and weight. Regarding defendant's complexion, the photographs of record do not depict any marked differences in complexion among the participants. Moreover, we note no marked variance in the physical build of the subjects in the photograph.

While it is generally preferable to present lineup participants in attire which is not indicative of their confinement (or alternatively to present all lineup participants in jailhouse attire, see, e.g., *United States v Erickson*, 797 F Supp 1387, 1394 (ND Ill, 1992)), in this case, defendant was not the only person in the lineup wearing an orange jumpsuit. Furthermore, both Arnold and Primm testified that their identification of defendant was based solely on his facial features, not any clothing or physical characteristics. Arnold specifically testified that his identification of defendant was not based on defendant's jumpsuit. In sum, defendant has not shown that the lineup was so suggestive as to distinguish substantially defendant from the other participants.

To the extent that defendant argues that Arnold's and Primm's identifications were based upon factors external to the lineup, he has not provided evidence in support of that assertion. While defendant argues that Arnold saw defendant's picture on television before making his identification, Arnold's testimony makes clear that he only viewed defendant's name on the news *after* the lineup was conducted. Thus, defendant has provided no evidence of any influence that would render the lineup impermissibly suggestive.

Finally, even had defendant shown that the lineup was impermissibly suggestive, he has not shown that the error undermined the reliability of the jury's verdict. MCR 2.613(A). Several other pieces of evidence presented at trial tended to establish defendant's identity as the shooter. First, Hollis testified that he had known defendant for three years before the shooting, the two had a disagreement the day before the shooting, and defendant asked Hollis if he wanted to fight before starting to shoot, calling Hollis by his nickname when doing so. On appeal, defendant has not challenged Hollis's identification. Moreover, the record indicates that defendant was seen in a vehicle matching the description of the get-away vehicle shortly after the shooting. The evidence further shows that defendant fled when questioned by police. Defendant's flight is relevant circumstantial evidence of his consciousness of guilt. *Unger*, 278 Mich App at 226.

Given this evidence of defendant's identity, we conclude that any error in the admission of Arnold's and Primm's identification of defendant would have been harmless. To the extent that defendant argues that his lineup counsel was ineffective for failing to object to the lineup procedure, because defendant has not shown that the lineup was impermissibly suggestive or that any suggestiveness undermines the reliability of the jury's verdict, defendant has failed to show that his lineup counsel was ineffective. *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

## III. CONCLUSION

Before the jury returns its verdict, the trial court may supplement its instructions in any manner consistent with the accurate determination of the charges. Thus, in the situation presented here, when the trial court unintentionally omitted any instruction on two entire counts, the trial court did not abuse its discretion by providing accurate supplemental instructions addressing each of the charged counts. Because defendant's remaining claim of error is similarly without merit, we affirm his convictions.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly