*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID JAMES CRAMER, JR.,

Defendant-Appellant.

UNPUBLISHED
December 22, 2022

No. 359266
Bay Circuit Court
LC No. 20-010385-FH

Before: PATEL, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), and the trial court's order finding him in contempt of court, MCL 600.1711. The trial court sentenced defendant to serve 90 days in jail and one year of probation for the resisting or obstructing a police officer conviction and three days in jail for contempt of court. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant's conviction of resisting or obstructing a police officer arose from an incident during the evening of July 4, 2020, at approximately 9:00 p.m. On that date, Bay City Department of Public Safety Officers Austin Bischer and Jonah O'Laughlin were working in full police uniform and traveling in a fully marked police vehicle. At the beginning and during his shift, Officer Bischer reviewed subjects with active felony warrants, and if he encountered those subjects during his shift, he would take the individuals into custody to protect the public. As a result of this review, Officer Bischer learned that defendant had a valid felony warrant for operating while intoxicated. He was familiar with defendant because of prior contacts and reviewed defendant's recent driver's license photograph as well as social media postings to confirm his identity and appearance.

When the officers drove up to an address on Fitzhugh, defendant was observed standing on the sidewalk near the front yard. When Officer Bischer got out of his patrol vehicle and asked defendant if he could talk to him, defendant began to turn away from Officer Bischer. After Officer Bischer instructed defendant not to go anywhere, defendant started running toward the house. As

defendant went up the steps to the house, Officer Bischer told defendant that he had a felony warrant for defendant's arrest, but defendant continued up the steps and entered the house. Although Officer Bischer followed defendant to the steps with the intent to take defendant into custody, an unknown individual prevented the officer from going up the steps. Additionally, the officers were concerned about their safety because there were 5 to 10 individuals present that were acting in an aggressive manner. After defendant entered the home, defendant's father appeared on the front steps and stood above Officer Bischer. He also cursed, screamed, and threatened the officer.

After defendant entered the house, Officer O'Laughlin walked to the backyard and saw defendant leave through the back door. Officer O'Laughlin said, "stop, police," and defendant began to run. Officer O'Laughlin chased defendant. Defendant ran around a shed that was at the end of the driveway and back to the front yard. Officer Bischer told defendant to "come over here," but defendant reentered the house. Additional officers and a sergeant arrived at the scene. The sergeant and defendant's father deescalated the situation. Defendant eventually exited the home and was taken into custody approximately 15 minutes after the incident began.

On September 24, 2021, the trial commenced, but defendant did not appear. At 8:55 a.m., the trial court went on the record to inquire about defendant's location. Defense counsel represented that he was unable to reach defendant on his home telephone, his cellular telephone, or by text message. Defendant's mother called defense counsel's office, reporting that defendant was at work, and representing that she would call him and tell him to report to the courthouse. The trial court revoked defendant's bond and issued a bench warrant for his arrest. The trial court noted that 40 prospective jurors were waiting.

At 9:22 a.m., defendant appeared for the trial. At a separate contempt proceeding, defendant represented that he was at work and misunderstood the date of trial. Defendant believed that the trial was scheduled for two days later. While at work, defendant saw that he missed three calls from his mother. Upon learning that the trial was scheduled, defendant left work and came to the courthouse. Defense counsel stated that he advised defendant of the trial date and sent notices to defendant's home. Defense counsel did not dispute that defendant was in contempt of court. He noted that defendant arrived for the trial, and the court was only "a little bit behind." Accordingly, defense counsel requested that no or "light" sanctions be imposed. The trial court held defendant in contempt and initially imposed a sentence of 30 days in jail, but reduced the sentence to three days.

At the trial, Officers Bischer and O'Laughlin testified regarding defendant's felony warrant, their arrival on the scene, defendant's failure to adhere to their commands, the aggressive nature of the bystanders at the scene, and the need to call additional officers. After approximately 15 minutes, defendant was taken into custody. Additionally, both officers wore body cameras, and the footage was admitted and played for the jury. At the conclusion of the testimony, the jury found defendant guilty of assaulting, resisting, or obstructing a police officer.

## II. SUFFICIENCY OF THE EVIDENCE——RESISTING OR OBSTRUCTING

Defendant alleges that the prosecution presented insufficient evidence to support the conviction of resisting or obstructing a police officer. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). When reviewing the sufficiency of the evidence, this Court must examine the evidence, whether direct or circumstantial, in a light most favorable to the prosecution and determine whether a rational trier of fact could determine whether the crime's essential elements were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). Due process compels the prosecution to prove every element of a crime beyond a reasonable doubt. *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021). "A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses." *Kenny*, 332 Mich App at 403.

The element of intent may be inferred from circumstantial evidence. *People v Johnson-El*, 299 Mich App 648, 653; 831 NW2d 478 (2013). Because of the difficulty in proving an actor's state of mind, only minimal circumstantial evidence is required to establish a defendant's intent. *Smith*, 336 Mich App at 308. *Id.* A defendant's intent can be gleaned or inferred from his actions. See *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011).

To convict a defendant of assaulting, resisting, or obstructing a police officer under MCL 750.81d(1), the prosecution must prove: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014) (quotation marks and citation omitted). Third, because citizens have a common-law right to resist illegal police conduct, the prosecution must also prove that the officers' actions were lawful. See *People v Moreno*, 491 Mich 38, 48, 51-52; 814 NW2d 624 (2012) (holding that MCL 750.81d did not abrogate the common-law right to resist illegal police conduct, including unlawful arrests). The lawfulness of the arrest presents an element of the offense, and an issue for resolution by the jury. *Vandenberg*, 307 Mich App at 68-69. Prearrest flight is sufficient to establish the offense of resisting and obstructing a police officer. *People v Pohl*, 207 Mich App 332, 333; 523 NW2d 634 (1994). Physical obstruction need not occur,[1] rather, a defendant's conduct in hindering a police officer's investigation is sufficient. *Id.*

For a jury to convict a defendant of resisting or obstructing a police officer, all that is necessary is for the jury to find that defendant took the "requisite physical action to prevent a police officer from performing his lawful duties." *People v Morris*, 314 Mich App 399, 414; 886 NW2d 910 (2016). It was unnecessary to prove that the defendant ran away from the officers. *Id.* "[O]bstructing an officer through a 'knowing failure to comply with a lawful command' requires some physical refusal to comply with a command, as opposed to a mere verbal statement of disagreement." *Id.* at 409 n 6. In this case, the prosecution presented sufficient evidence that defendant took the requisite physical action to prevent the officers from performing their lawful duty of arresting him when he ran away after being ordered to stop. *Pohl*, 207 Mich app at 333.

---

[1] " 'Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

Defendant's acts of running away prevented the officers from performing their lawful duty of arresting him in light of a pending lawful felony warrant.

Nonetheless, defendant submits that there was insufficient evidence that defendant knew that the officers arrived to arrest him or that he intended to resist them in the performance of their duties. Specifically, on appeal, defendant contends that the officers did not advise him of the outstanding felony warrant until he was in the home, and once he was apprised about the warrant, he voluntarily surrendered. But defendant did not testify at trial, and there is no record evidence to support defendant's contention. Rather, Officer Bischer testified that he advised defendant of the warrant *before* defendant entered the home. To convict defendant of resisting or obstructing a police officer, the jury apparently found this testimony credible. *Morris*, 314 Mich App at 415.

Furthermore, the evidence must be viewed in the light most favorable to the prosecution. *Reese*, 491 Mich at 139. Thus, after being apprised of the felony arrest warrant, defendant ran into the home. He also exited the back of the home and disregarded Officer O'Laughlin's instructions to stop, avoided the officer by running around a shed, and ran to the front yard and reentered the home. Officer Bischer testified that a sergeant and other officers arrived at the scene and negotiated a peaceful resolution with defendant's father. There was no testimony that defendant learned of a lawful warrant and then decided to surrender.

Finally, contrary to defendant's assertion, there is no requirement that the prosecutor establish that defendant knew that the police officer's actions were lawful. The prosecution was required to prove that the officers' actions were lawful, *Moreno*, 491 Mich at 51-52, not defendant's *knowledge* of lawfulness. Whether an officer's actions were lawful is a "question of fact for the jury," *People v Quinn*, 305 Mich App 484, 494; 853 NW2d 383 (2014), and the jury resolved this issue in favor of the prosecution. Accordingly, the prosecution presented sufficient evidence to prove beyond a reasonable doubt that defendant knew or had reason to know that the individuals he resisted were police officers performing their duties because the officers were in a fully marked police vehicle and dressed in their police uniforms when they encountered defendant. The prosecution also presented sufficient evidence to prove beyond a reasonable doubt that the officers' actions were lawful, because the purpose of Officer Bischer's and O'Laughlin's encounter with defendant was to arrest him pursuant to a felony warrant. Viewing the evidence in the light most favorable to the prosecution, a reasonable juror could find, beyond a reasonable doubt, that defendant knew or had reason to know that he was resisting or obstructing police officers who were performing their duties and that the officers' actions were lawful.

## III. JURY INSTRUCTIONS

Defendant contends that the trial court's supplemental jury instruction deprived him of a viable defense—that is, that he fled because he was panicked and in fear and did not know that there was a warrant for his arrest—and, therefore, violated his constitutional right to present a defense. We disagree.

"We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017) (quotation marks and citation omitted). A trial court abuses its discretion when its decision is not within the

range of reasonable and principled outcomes, when it makes an error of law, or when it operates within an incorrect legal framework. *Id*. at 516. Furthermore, "[e]ven when instructional error occurs, [r]eversal is warranted only if after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Id*. at 528 (quotation marks and citation omitted; second alteration in original). Finally, the burden is on the defendant to show "that the error undermined the reliability of the verdict." *Id*. at 528-529 (quotation marks and citation omitted).

In this case, the trial court instructed the jury on the elements of resisting or obstructing in accordance with M Crim JI 13.1. During closing arguments, defense counsel argued that the prosecution had to prove that defendant knew or had reason to know that the officers' actions were lawful at the time of the incident. The prosecutor objected to defense counsel's mischaracterization of the law and requested a curative instruction. As noted in section II, defendant's statement of the law was incorrect, and the trial judge concluded the same. The trial court reinstructed the jury using the same instruction that it had previously given, but the court added the following sentence to the instructions provided in M Crim JI 13.1: "The prosecutor need not prove that at the time of the events the [d]efendant knew that the order, or command was lawful."

"[J]ury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). MCR 2.512(B)(1) provides that "[a]t any time during the trial, the court may, with or without request, instruct the jury on a point of law if the instruction will materially aid the jury in understanding the proceedings and arriving at a just verdict." When the applicable law or circumstance is not covered by the Model Criminal Jury Instructions, a trial court may give additional instructions as long as they are "patterned as nearly as practicable after the style of the model instructions" and are "concise, understandable, conversational, unslanted, and nonargumentative." MCR 2.512(D)(4). This court rule gives the trial court broad authority to fulfill its requirement to instruct the jury properly, and there is nothing in the rule to preclude the trial court from supplementing its original instructions. *People v Craft*, 325 Mich App 598, 607; 927 NW2d 708 (2018). Rather, the court rule was designed to provide the trial court with the appropriate tools to avoid error, and if necessary, to correct any errors. *Id*.

The trial court did not abuse its discretion by providing a supplemental instruction upon request by the prosecution after defense counsel misstated the law. The supplemental instruction was concise and understandable, and resolved any confusion created by the inappropriate argument by the defense. Further, defendant's argument that the supplemental instruction infringed upon his due process right to present a defense is without merit. Defendant operated on a mistaken belief that the prosecution had to prove that at the time of the events defendant knew that the order or command was lawful. Such knowledge is not an element of resisting or obstructing, see MCL 750.81d(1).

## IV. CONTEMPT OF COURT

Defendant submits that the evidence was insufficient to prove that he exhibited disruptive behavior or that an order of contempt was necessary to restore order to the court. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *Savage*, 327 Mich App at 613; see also *In re Contempt of Henry*, 282 Mich App 656, 677; 765 NW2d 44 (2009). "The issuance of an order of contempt rests in the sound discretion of the trial court and is reviewed only for an abuse of discretion." *In re Contempt of Henry*, 282 Mich App at 671. The trial court abuses its discretion when its decision is outside the range of principled outcomes. *Id*. Additionally, the findings made by a trial court "in a contempt proceeding are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them." *Id*. at 668. "Clear error exists when this Court is left with the definite and firm conviction that a mistake was made." *Id*. at 669. Finally, "[t]he appellate court may not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *Id*. at 668.

"Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *Porter v Porter*, 285 Mich App 450, 455; 776 NW2d 377 (2009) (quotation marks and citation omitted). "Criminal contempt is intended to punish the contemnor for past conduct that affronts the dignity of the court." *Id*. The court's exercise of its criminal contempt power is not designed to force the contemnor to comply with an order, but simply punishes the contemnor for past misconduct that was an affront to the court's dignity. *Id*. There are several circumstances that may cause a trial court to find a defendant in criminal contempt of court, including when a party disobeys a "lawful order . . . of the court." MCL 600.1701(g).

Before the date of trial, the trial court entered several orders noticing the parties of the time and date of trial. Even so, when the trial court first went on the record at the commencement of defendant's trial at 8:55 a.m. on September 14, 2021, defendant was not present in the courtroom. It was not until 9:22 a.m.—27 minutes later—when the court reconvened that defendant was present in the courtroom. Although defendant testified that he thought his trial was on Thursday instead of Tuesday, defendant's counsel told the court that he had advised defendant of the trial date and had sent notices to defendant's house. By failing to arrive at the start of trial despite adequate notice, defendant disobeyed the trial court's order. Accordingly, the trial court did not err in finding defendant guilty of criminal contempt of court.

Affirmed.

/s/ Sima G. Patel
/s/ Thomas C. Cameron
/s/ Anica Letica