*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CEDRIC LYNN WINDOM,

        Defendant-Appellant.

UNPUBLISHED
April 27, 2026
11:17 AM

No. 364516
Wayne Circuit Court
LC No. 19-008287-01-FC

Before: GADOLA, C.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant was convicted after a jury trial of two counts of assault with intent to murder (AWIM), MCL 750.83, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to concurrent terms of 18 to 30 years' imprisonment for each count of AWIM, and concurrent terms of two years' imprisonment for each count of felony-firearm to be served consecutive to the sentences for AWIM. Defendant appeals as of right, and we affirm.

## I. FACTS

On October 6, 2019, defendant, then age 59, was working as a security guard at a grocery store in Detroit. Defendant was carrying a lawfully registered gun and had a concealed pistol license (CPL). Fanitta King was shopping at the store armed with a pistol holstered at her right hip; she had a valid CPL. King attempted to check out using the 10-items-or-less express lane though she had more than 10 items.[1] Because the store was busy, the cashier told King she could not check out in the express lane. When King became belligerent, defendant, who was standing nearby, told King she could not check out in the express lane. King testified that she responded to defendant, "who the f*** are you talking to? I'm a paying customer. How dare you." Defendant testified that King said, "f*** you motherf***er. You don't tell me what the f*** to do."

---

[1] At trial, King admitted that she had more than 10 items. She also admitted that she parked that day in a parking spot designated as "handicapped" only, though she was not handicapped.

Defendant replied with similar profanity. After a heated exchange, King moved to another lane. Before leaving, King made a hostile comment to defendant. King later testified that she said to defendant, "I got something for you." Another cashier, Ebony Grissett-Allen, testified that King said, "I'm going to get my dude, I got something for your a**, mother f***er. You gone get dealt with today, mother f***er."

King left the store and called her boyfriend, Claude McElrath, and asked him to confront defendant on her behalf. A few minutes later, McElrath arrived and parked his motorcycle by the front door of the store. He was unarmed. King and McElrath entered the store and approached defendant. McElrath confronted defendant about speaking disrespectfully to King, which defendant denied stating, "that b**** is lying." Defendant testified that McElrath then threatened to wait for him after work, to "whoop his a**," and to kill him. Defendant testified that McElrath put his finger under his own chin in a gesture of firing a gun. King and McElrath denied threatening defendant.

After a heated argument, one of the men suggested going outside; defendant and McElrath disagree regarding who suggested going outside. Grisset-Allen testified that McElrath asked defendant to go outside, threatened to "f*** up" defendant, and told defendant that he would be waiting for defendant outside when defendant got off work. King and McElrath left the store, and defendant followed. Defendant testified that while leaving the store, McElrath and King appeared to exchange something between them. McElrath and King both testified that King did not give McElrath her gun that day. The argument among the three of them continued outside. King started to walk toward her car, then changed course and walked back toward the two men who continued to argue. McElrath got on his motorcycle and started to maneuver the motorcycle away from the front of the store. While doing so, McElrath reached into his righthand jacket pocket; he later testified that he reached for his phone. Defendant shot McElrath in the chest; defendant later testified that he thought McElrath was reaching for a gun. Defendant conceded that McElrath's hands were on his motorcycle by the time defendant fired but testified that he "just snapped."

King ran toward defendant and drew her gun, aiming it at defendant. Defendant shot King in the neck. Defendant testified that he then saw McElrath crawling toward his motorcycle and feared McElrath had a gun in the saddlebags, so he shot McElrath in the leg. Both McElrath and King were seriously injured. The police arrived and arrested defendant. The entire encounter, both inside and outside the store, was video recorded by surveillance cameras, although without audio. The video recording was introduced at trial.

The jury convicted defendant of two counts of AWIM and two counts of felony-firearm. Defendant claimed an appeal in this Court and moved for remand to the trial court for resentencing and for an evidentiary hearing to determine whether defendant's trial counsel was ineffective. This Court denied the motion. *People v Windom*, unpublished order of the Court of Appeals, entered July 31, 2025 (Docket No. 364561).

## I. DISCUSSION

## A. PROSECUTORIAL ERROR

Defendant contends that the prosecutor impermissibly vouched for the prosecution's witnesses by questioning defendant at trial about the testimony of the other witnesses. We disagree.

Because defendant in this case did not object and assert this basis for the objection while the prosecution was cross-examining defendant, this issue is unpreserved. See *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021) (a party must contemporaneously and specifically object and request a curative instruction). We review an unpreserved challenge for plain error affecting the defendant's substantial rights, meaning that the defendant must show that an error occurred, that it was clear or obvious, and that it caused prejudice, i.e., that the error affected the outcome of the proceedings. *Id*., citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is proper only if the defendant is "actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021).

Whether a prosecutor committed error depends on whether the defendant was denied a fair and impartial trial. *People v Anderson*, 331 Mich App 552, 565; 953 NW2d 451 (2020). We consider an allegation of prosecutorial error in the context of the entire record. *Id*. A prosecutor is not permitted to vouch for the credibility of his or her witnesses by suggesting that the prosecutor has special knowledge of the witness's truthfulness. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). However, a prosecutor is free to argue that a witness is or is not credible. *People v Clark*, 330 Mich App 392, 434; 948 NW2d 604 (2019).

Defendant argues that the prosecutor improperly vouched for the credibility of the prosecution's witnesses by asking questions during cross-examination of defendant that required defendant to state whether the other witnesses testified consistently with defendant. For example, the prosecutor asked defendant whether any other witness testified that McElrath threatened to kill defendant:

> *Q*. But they were asked on several occasions, would you agree with me, []
> whether or not there was a threat made. They were asked those questions, correct?
> Yes or no.
>
> *A*. I don't remember that.
>
> *Q*. Okay. Well, if you don't remember, that's fine. But none of 'em said
> it, correct?
>
> *A*. Correct.

The prosecutor's cross-examination of defendant regarding the discrepancies between his testimony and the testimony of the other witnesses does not constitute vouching. In a criminal prosecution, a prosecutor presents witnesses who typically give testimony that supports the prosecution's theory of the case. If the defendant testifies, the prosecutor typically cross-examines

the defendant about any discrepancy between the defendant's version of events and the testimony of the other witnesses. Pointing out such discrepancies is not a suggestion by the prosecutor that he or she has special knowledge regarding the truthfulness of the other witnesses. Here, the prosecutor did not suggest that she had special knowledge concerning the truthfulness of any witness, nor did the prosecutor's questions inject her personal opinions that any witness was truthful. See *Bahoda*, 448 Mich at 276. Because the prosecutor did not vouch for the prosecution's witnesses, we do not find plain error in the prosecutor's questioning of defendant. We also reject defendant's argument that his trial counsel was ineffective for failing to object to the questioning on this basis. To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness, and that but for counsel's deficient performance there is a reasonable probability that the outcome of the proceedings would have been different. *People v Zitka*, 335 Mich App 324, 340-341; 966 NW2d 786 (2020). To do so, the defendant must establish the factual predicate for that claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Here, the prosecutor did not vouch for the prosecution witnesses, and defense counsel was not ineffective for failing to raise a meritless objection. See *Zitka*, 335 Mich App at 341.

## B. MOTION FOR MISTRIAL

Defendant argues that the trial court abused its discretion by denying his motion for a mistrial and declining to give a curative instruction after Detroit Police Officer Stuart Martin testified that, based on the surveillance footage, defendant did not appear to act in self-defense.[2] We disagree.

We review the trial court's denial of the motion for mistrial for an abuse of discretion, which occurs when the trial court chooses an option outside the range of principled outcomes. *People v Caddell*, 332 Mich App 27, 37; 955 NW2d 488 (2020). We review de novo claims of instructional error involving questions of law. *People v Craft*, 325 Mich App 598, 604; 927 NW2d 708 (2018).

Officer Martin testified that as a Detroit Police Officer he works on cases involving violent crimes, gun crimes, and narcotics. On the day of the incident, he responded to the scene and reviewed the store's surveillance video. After watching the video, he directed other officers to arrest defendant because the video showed defendant shooting the victims. At trial, defense counsel cross-examined Officer Martin as follows:

---

[2] The prosecution argues that defendant abandoned this issue by failing to raise it in the statement of questions presented in his brief on appeal. Although issues not raised in the statement of questions presented are deemed abandoned on appeal, *People v Albers*, 258 Mich App 578, 584; 672 NW2d 336 (2003); MCR 7.212(C)(5), in this case, although worded as a due process claim in defendant's statement of the questions presented, defendant challenges the trial court's denial of his motion for a mistrial or for a curative jury instruction. We deem the issue sufficiently raised on appeal in this case.

-4-

*Q.* And when you say based on your review of the video you thought that the security guard should be questioned, correct?

*A.* Yes, but arrested and questioned.

*Q.* Right. But you're not the one who was making the decision as to whether to charge him or not, correct?

*A.* I mean, there's probable cause for the arrest. I don't do the charging.

*Q.* Right. But you don't know what the story is at that time?

*A.* Correct.

*Q.* All you know is you saw on the video that [defendant] did the shooting?

*A.* Yes, sir.

*Q.* You don't know if there's self-defense involved or not, correct?

*A.* From what I viewed on the video, it didn't appear to be that's why—

*Q.* Was there audio on the video?

*A.* No, sir.

Outside the presence of the jury, defense counsel moved for a mistrial arguing that Officer Martin had testified that defendant was guilty. The trial court denied the motion observing that the officer did not state that defendant was guilty but rather "said something to that [e]ffect that it didn't look like self-defense," and that he believed there was probable cause for the arrest. The trial court reasoned that there was no irregularity that would impair defendant receiving a fair trial. Defense counsel then clarified that he made the motion at defendant's insistence.

> And I guess my client's argument centers around the fact when the officer said it did not appear to me to be self-defense. My client's argument is that that came to the jury when they're listening to a police officer reaching the conclusion that that did not rise to self-defense, and according to him, when they're the triers of fact, he's not the one. So if the Court[] is denying the motion then maybe I would ask for an instruction to the jury that they are not to consider that in [] deliberation[.]

Under the doctrine of invited error, "a party waives the right to seek appellate review when the party's own conduct directly causes the error." *People v McPherson*, 263 Mich App 124, 139; 687 NW2d 370 (2004). Here, defense counsel asked Officer Martin whether the officer knew if defendant acted in self-defense based on the officer's review of the video. Defendant thereby waived any objection to Officer Martin opining that defendant did not appear in the video to act in self-defense. See *id*. at 138-139.

We also disagree that the trial court abused its discretion by failing to give a curative instruction to the jury. The record indicates that defense counsel did not explicitly request a curative instruction but rather stated "if the Court[] is denying the motion then *maybe I would ask for an instruction* to the jury that they are not to consider" the officer's testimony (emphasis added). We conclude that the trial court did not abuse its discretion by failing to give an instruction defense counsel never requested.

## C. JUDICIAL BIAS

Defendant contends that he was denied a fair and impartial trial because the trial court exhibited judicial bias in several instances during the trial. We disagree.

Whether judicial misconduct denied the defendant a fair trial is a question of constitutional law that we review de novo. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). However, defendant concedes that this issue is unpreserved in this case because he did not raise it before the trial court. See *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). We therefore review this issue for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763-764. But because this alleged constitutional error is structural, *Stevens*, 498 Mich at 178, the third prong of the plain-error standard is satisfied, establishing a rebuttable presumption regarding the last element of the plain-error test, and the burden shifts to the prosecution to demonstrate that any error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *People v Davis*, 509 Mich 52, 74-76; 983 NW2d 325 (2022).

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *People v Loew*, 340 Mich App 100, 110-111; 985 NW2d 255 (2022). The defendant claiming judicial bias must overcome "a heavy presumption of judicial impartiality." *Jackson*, 292 Mich App at 598 (quotation marks and citation omitted). "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality," *Stevens*, 498 Mich at 170, which occurs when "considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party," *id*. at 171. This is a fact-specific inquiry considering the circumstances of each case and considering the cumulative effect of any errors. *Id*. at 171-172. Relevant factors include:

> the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

Improper judicial conduct can include "belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id*. at 172-173.

However, though not unlimited, a trial judge has discretion when controlling the court's proceedings. *People v Boshell*, 337 Mich App 322, 347; 975 NW2d 72 (2021). Under the Michigan Code of Judicial Conduct, Canon 3(A)(8), a judge may intervene to promote expedition, prevent waste of time, or clear up obscurity, but "should bear in mind that undue interference,

impatience, or participation in the examination of witnesses, or a severe attitude on the judge's part toward witnesses . . . may tend to prevent the proper presentation of the cause." *Stevens*, 498 Mich at 174, quoting Code of Judicial Conduct, Canon 3(A)(8) (quotation marks omitted). " 'In addressing counsel, litigants, or witnesses, the judge should avoid a controversial manner or tone.' " *Stevens*, 498 Mich at 174, quoting Code of Judicial Conduct, Canon 3(A)(8).

In this case, defendant asserts that the trial judge demonstrated bias by admonishing defendant during trial. Defendant first points to a comment the trial court made after denying his motion for a mistrial on the third day of trial. Defense counsel explained to the trial court that defendant had insisted that the motion be made. After denying the motion and allowing defense counsel to make a further record, the trial court stated, "Let's try to keep these motions as advanced by lawyers not by lay people, okay? I'm not going to try this case with two defense lawyers. Just something to think about." This comment was made outside the presence of the jury.

The remainder of defendant's asserted instances of bias involve the trial court instructing defendant during his cross-examination that he was limited to responding to questions. During cross-examination, the prosecutor asked defendant whether he called King a b****, and defendant responded that he possibly said she was acting like a b****. The trial court said, "Okay. That's . . . unresponsive." A few moments later, the trial court interrupted defendant's testimony to point out there was "no question on the table." Shortly after that, the trial court directed defendant to listen to the question and answer it.

When the prosecutor asked defendant whether anyone else testified that McElrath had threatened defendant, defendant's answer initially was not responsive, and the trial court again instructed defendant to listen to the question and answer it in the same format in which the question was asked. Shortly thereafter, defendant cut off the prosecutor's question and answered before she had finished. The trial court stated that "[w]e have to get the question out before it is answered. And you have to respond in the proper form. This is like the fourth time I've had to correct now on this. Please follow the court's orders."

When the prosecutor then asked whether defendant heard any of his coworkers testify that McElrath was going to wait for defendant and kill him at his car, defendant said those witnesses were "lying," and "I though[t] we was here for the truth." The trial court then declared a break and dismissed the jury. Outside the presence of the jury, the trial court told defense counsel to take a few minutes with defendant to advise him of proper courtroom procedures "[b]efore I terminate his testimony altogether." Shortly after the jury returned and questioning resumed, the trial court once more directed defendant to provide a yes or no answer and later directed the prosecutor to repeat her question because defendant did not answer what was asked.

Although the trial court admonished defendant several times during defendant's cross-examination, the trial court also sustained defendant's objections to the prosecutor's inappropriate comments. When defendant testified that he had intended initially to shoot McElrath in the leg, the prosecutor, referring to the video showing defendant shooting McElrath in the chest, remarked, "Then I need glasses." Defense counsel objected, and the trial court struck the remark. When the prosecutor asked whether defendant knew that night if King and McElrath had died, and defendant said they did not, the prosecutor responded, "Lucky for them." Defense counsel objected and the trial court struck the comment, but then said, "But once again I would urge [defendant] to stop

arguing with counsel and to listen to the question that's asked and answer it. I think that's about the 15th time I've had to say this." Shortly after, the trial court twice more directed defendant to wait for the prosecutor to ask a question before speaking. The judge told defendant she was running out of patience with him, and "this is not the time for you to engage in a . . soliloquy." On re-cross, the trial court again cautioned defendant to answer the question asked and not to interrupt the court.

Defendant argues that the trial court exhibited bias against defendant by interrupting his cross-examination. However, the majority of these interruptions were to direct defendant to wait until the prosecutor finished her question and to provide a direct answer to the question that was actually asked. In addition, two of the instances asserted by defendant occurred when the jury was not present, and therefore the jurors were not influenced by the comments. We conclude that the trial court was within its discretion to redirect defendant to control and expedite the proceedings. See *id*. at 174; *Boshell*, 337 Mich App at 347. We further conclude that the tone and demeanor of the judge was appropriate when directing defendant to answer the questions asked.

We also consider the scope of judicial intervention in light of the length or complexity of trial and of the issues involved. *Stevens*, 498 Mich at 176. In this case, trial proceeded for four days and was not complex; defendant did not dispute that he shot King and McElrath. However, defendant's testimony took the majority of the last day of trial. The amount of judicial intervention was not improper given defendant's repeated failures to follow the court's instructions. Considering also the extent to which the judge's comments or questions were directed to defendant more than the prosecution, we observe that the trial court in this case intervened primarily during defendant's cross-examination because defendant did not follow the trial court's instructions. The trial court, however, also struck inappropriate remarks by the prosecutor upon defendant's objections. We perceive no demonstration of bias by the trial court.

Defendant also argues that the trial court failed to provide curative instructions to the jury regarding the judge's inappropriate questions or commentary. However, defendant did not request curative jury instructions nor assert judicial bias at trial, and defense counsel expressed satisfaction with the final jury instructions. "Defense counsel cannot acquiesce to the court's handling of a matter at trial, only to later raise the issue as an error on appeal." *People v Buie*, 491 Mich 294, 312; 817 NW2d 33 (2012) (quotation marks and citation omitted). Considering the circumstances of this case, defendant has not shown that the trial court committed plain error in its conduct that defendant alleges constitutes judicial bias.

## D. SENTENCING

Defendant argues that his within-guidelines sentence was not proportionate to the circumstances surrounding the offense or the offender. We disagree.

We review the trial court's sentencing decision for an abuse of discretion. *People v Skinner*, 502 Mich 89, 131; 917 NW2d 292 (2018). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness

of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

Sentences falling within a defendant's sentencing-guidelines range have a "nonbinding presumption of proportionality." *People v Posey (On Remand)*, 349 Mich App 199, 203; 27 NW3d 137 (2023) (*Posey II*).[3]   The defendant bears the burden to prove that his within-guidelines sentence is unreasonable or disproportionate. *Id*.  In this case, defendant's sentencing guidelines range was 135 to 235 months' imprisonment, or 11.25 to 18.75 years, and the trial court sentenced defendant on his AWIM convictions to 18 to 30 years imprisonment, which the trial court acknowledged was near the top of the guidelines.   The trial court considered that defendant had no criminal record, had served in the military, was 62 years old, and had health concerns; however, the two victims were severely injured and were fortunate to have survived, and defendant had the opportunity to walk away from the conflict but chose to shoot the victims.

Defendant fails to demonstrate that his within-guidelines sentence was disproportionate. *Id*. at 203.  Defendant argues that his age and poor health make his sentence disproportionate, and because he would be 82 years old when he is first eligible for parole, his sentence constitutes a de facto life sentence.  However, a defendant's age is insufficient to overcome the presumption of proportionality.  *Purdle*, 350 Mich App at 456.  Here, the trial court properly considered that defendant had no previous criminal record and had health concerns but also considered that defendant's offenses were particularly egregious; defendant seriously injured both victims after an argument, shooting McElrath the second time at close range while the victim was on the ground, after having the opportunity to walk away from the conflict.  We conclude that defendant failed to overcome the presumption that his 18-year minimum sentence for AWIM is proportionate.

---

[3] MCL 769.34(10) provides that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."   The Michigan Supreme Court addressed the constitutionality of this clause of MCL 769.34(10) in *People v Posey*, 512 Mich 317; 1 NW3d 101 (2023) (lead opinion by BOLDEN, J., joined by BERNSTEIN, J.), (CAVANAGH, J., concurring in part and concurring in the judgment), and (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment) (*Posey I*).   Here, the prosecution argues that *Posey I* is not binding because it was a plurality opinion, and there was no agreement on the legal reasoning of the majority holding, and that this Court therefore should affirm defendant's sentence under MCL 769.34(10).  In the interest of judicial economy and jurisprudential stability, however, we apply the essential holdings upon which the *Posey I* plurality agreed.  See *People v Purdle (On Remand)*, 350 Mich App 446, 453-454; 32 NW3d 479 (2024).

## E. STANDARD 4 BRIEF

Defendant also filed with this Court a supplemental appellate brief in propria persona, known as a Standard 4 brief. See Administrative Order No. 2004-6, 471 Mich c, cii (2004). The majority of defendant's Standard 4 brief presents a recitation of his version of the incident. Defendant also requests the victims' medical records. The issues raised in defendant's Standard 4 brief are difficult to ascertain; defendant appears to assert that he did not receive a fair trial because the judge and the police officer were biased against him, that his trial was delayed and witnesses therefore could not remember the events, that certain witnesses were not interviewed by the police or by defense counsel, and that the prosecution did not produce exculpatory evidence, though defendant does not identity the evidence in question. Because these statements in defendant's Standard 4 brief lack any reference to the record, any analysis, and any citation to authority, the claims are abandoned on appeal. See *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016).

Affirmed.

/s/ Michael F. Gadola
/s/ James Robert Redford
/s/ Michelle M. Rick