*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAZON LOUIS MATHIS,

        Defendant-Appellant.

UNPUBLISHED
February 25, 2025
9:05 AM

No. 364686
Oakland Circuit Court
LC No. 2022-280248-FC

Before: O'BRIEN, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right from his jury-trial convictions of two counts each of first-degree premeditated murder, MCL 750.316(1)(a); and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to life imprisonment without the possibility of parole for each of his first-degree-murder convictions and two years' imprisonment for each of his felony-firearm convictions. We affirm.

## I. BACKGROUND

Defendant's convictions arise from the July 4, 2021 fatal shooting of two victims, Jonathan Alvarado-Santiago and Christopher Cintron-Mateo. In days leading up to the shooting, defendant and Jonathan engaged in a quarrel through Facebook Messenger. The dispute appeared to be about Adriana Zayas-Padilla, who was pregnant by Jonathan and had two children with defendant. On July 3, 2021, between 12:50 a.m. and 1:08 a.m., Jonathan placed five calls to defendant, but defendant did not answer. At 3:13 a.m., Jonathan, who only spoke Spanish, translated his words via a cell-phone application and sent the English translation to defendant: "I want to fight with you when you want and where you want, two fists, as a man."

On the evening of July 3, 2021, defendant discovered that his vehicle's windshield had been cracked. At the time, his vehicle was parked in the driveway of his home. Defendant suspected it had been Jonathan who committed the act, but he did not report the incident to the police. On July 4, 2021 at 2:36 a.m., defendant made a video call to Jonathan, which lasted 55-

-1-

seconds.[1] Later, at 10:46 a.m. and 11:27 a.m., Jonathan called defendant, but defendant did not answer either call.

In the early afternoon of July 4, 2021, defendant purchased a nine millimeter Glock handgun from Bass Pro Shops. At 12:58 p.m., Jonathan made a video call to defendant, who did not answer. Defendant returned the video call one minute later, but Jonathan did not answer. Defendant placed another video call to Jonathan at 1:01 p.m., and this time he answered. The two spoke for approximately two minutes. Almost immediately afterward, at 1:03 p.m., Jonathan made a video call to defendant, which he answered. The call again lasted about two minutes.

Fewer than 10 minutes after the last video call ended, Jonathan and Christopher arrived at defendant's house. Before they arrived, Christopher spoke to his fiancée and told her someone had broken the windows out of Jonathan's vehicle. Christopher's fiancée suspected trouble and asked him to come home. Christopher did not heed the advice, and instead, drove Jonathan to defendant's house.

Nydia Batiste, who lived across the street from defendant, observed a black Chrysler 300 drive past defendant's house, turn around, and park directly in front of defendant's house. Nydia testified that she saw two men get out of the vehicle. Almost immediately after the men exited the vehicle, defendant ran out of the front door of his house and opened fire on the victims. Nydia did not hear any arguing or shouting before the gunshots began.

Defendant shot Jonathan eight times. Defendant then walked around the vehicle and shot Christopher, who was trying to get under his vehicle, 12 times. Defendant had an extended magazine on his Glock handgun, which provided him with the capability to fire 33 rounds before reloading. Defendant returned to his house after shooting the victims. He removed the extended magazine from the gun and placed it on a table in the living room. He then called 911. Defendant reported that the victims came to his house and tried to fight him, so he shot them. Defendant stated that he was inside the house and wanted to cooperate. He followed instructions from the dispatch operator to put his gun in a safe and exit the house with his hands raised.

When the police arrived, both victims were lying face down and unresponsive in pools of blood on each side of the vehicle. Jonathan was lying partially under the passenger side of the car. Christopher was lying half under the driver's side of the car. Both victims were pronounced dead at the scene.

Defendant participated in an interrogation where he claimed that he shot the victims because he feared for his life. He cited threatening messages from Jonathan, and noted both victims had their hands behind their backs when they approached his house. Although defendant did not see a gun, he suspected the victims might be armed. Defendant told police that the victims came all the way to his porch, or very close to it, before he started firing. He initially stated that he began shooting when he was still inside the house and then continued the shooting outside of

---

[1] The record does not include the content of any of the video calls.

the house. Later during the interrogation, he changed his story and said he began shooting when he was on the porch. Defendant denied walking around the car to shoot Christopher.

Defendant was charged and tried on two counts each of first-degree premeditated murder and felony-firearm. Defendant claimed self-defense. Defendant did not testify, but instead relied heavily on his version of events provided during the interrogation. Forensic evidence presented at trial revealed that 27 shell casings were recovered outside of defendant's house, and there were 27 bullets missing from the extended magazine found inside of defendant's house. All of the spent shell casings were located near Christopher's car. The shell casing, fired rounds, and bullet fragments matched defendant's gun. There was also evidence of blood pooled under the victims' bodies, but there were no blood trails leading from defendant's porch to the area where the victims ultimately died. Autopsies were performed on both victims. The medical examiner testified that all of the entry wounds on the trunks of the victims' bodies were in their backs. The victims had fresh abrasions on their faces, which, according to the medical examiner, indicated that the victims fell forward when they were shot. Given the location of the entry wounds and the presence of fresh facial abrasions, the medical examiner opined that both victims were turned away from the source of the gunfire when they were shot. The medical examiner opined that both victims died as the result of multiple gunshot wounds, and their manner of death was homicide.

Two videos recovered from Adriana's phone were played at trial. The videos were purportedly sent to Adriana from Jonathan. In one of the videos, Jonathan can be seen carrying what was described on the record as a landscaping brick. Another video showed Jonathan and another man, suspected to be Christopher, walking on property that appeared to be defendant's home. In both videos, Jonathan could be heard speaking in Spanish. The videos were played at trial, but were not translated to English for the jurors. The evidence revealed that there was a landscaping brick—which was similar to the one in the video—in Christopher's car, along with a screwdriver. A paring knife was recovered from the pocket of Jonathan's shorts. A forensic analysis of defendant's phone revealed that defendant deleted all of his outgoing video calls to Jonathan and a voice call he made to Jonathan about 10 minutes before the shooting.

The jury rejected defendant's self-defense claim and found him guilty of two counts each of first-degree premeditated murder and felony-firearm. Defendant was sentenced as indicated. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant, in both the brief filed by his appellate counsel and in his Standard 4 brief, argues there was insufficient evidence for a reasonable juror to believe beyond a reasonable doubt that he did not act in self-defense. We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917

NW2d 559 (2018) (cleaned up). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. (cleaned up). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

"It is a fundamental principle of our system of justice that an accused's guilt must be proved beyond a reasonable doubt to sustain a conviction." *People v Prude*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165664); slip op at 4 (cleaned up). "Accordingly, a conviction that is not supported by sufficient evidence to prove guilt beyond a reasonable doubt violates due process and cannot stand." *Id*. at ___; slip op at 4-5, citing US Const, Ams V and XIV; Const 1963, art 1, § 17. There is sufficient evidence for a guilty verdict when "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Mikulen*, 324 Mich App at 20. "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).

Defendant challenges his convictions of both first-degree premeditated murder and felony-firearm. As explained by our Supreme Court, the elements of first-degree premeditated murder "are (1) the intentional killing of a human (2) with premeditation and deliberation." *Oros*, 502 Mich at 240 (cleaned up). Stated differently, "[a] conviction of first-degree premeditated murder requires evidence that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011) (cleaned up). Our Supreme Court explained that "to premeditate is to think about beforehand and to deliberate is to measure and evaluate the major facets of a choice or problem." *Oros*, 502 Mich at 240 (cleaned up). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *Jackson*, 292 Mich App at 588 (cleaned up). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Bass*, 317 Mich App 241, 268-269; 893 NW2d 140 (2016) (cleaned up).

Defendant does not dispute the above elements were proven beyond a reasonable doubt. Instead, he contends there was insufficient evidence for a reasonable juror to believe defendant did not act in self-defense. "A killing may be considered justified if the defendant acts in self-defense." *People v Bailey*, 330 Mich App 41, 46; 944 NW2d 370 (2019). "[O]nce a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *People v Rajput*, 505 Mich 7, 11; 949 NW2d 32 (2020) (cleaned up). Self-defense, when proven, can excuse criminal behavior, "usually the killing of another person, if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (cleaned up).

"With the enactment of the Self-Defense Act (SDA), MCL 780.971 *et seq*., the Legislature codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Id*. at 708. Relevantly, MCL 780.972(1)(a) states:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . .

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Defendant asserts he was justified in using deadly force because he honestly and reasonably believed his life was in danger. While the record suggested there was a dispute between defendant and Jonathan on the days leading up to the shooting, there was no evidence that Jonathan made threats of deadly violence. Defendant argues that the fact Christopher turned his vehicle around and both victims left their doors open was evidence they meant to do serious harm to defendant. That evidence, though, is equally consistent with the victims arriving for a fist fight or a discussion. Moreover, neither Jonathan nor Christopher were visibly wielding weapons as they exited the vehicle, and the neighbor testified that she did not hear any arguing or shouting before the gunshots began.

Although defendant told the police that the victims came all the way up to his porch or the area near it and he began shooting from inside the doorway of his home, the evidence did not support his version of events. The neighbor testified that defendant ran out of the front door of his house and opened fire on the victims almost immediately after the men exited the vehicle. The neighbor's testimony was supported by evidence that the blood was pooled under the victim's bodies. There was no evidence of blood near the area of the front porch or anywhere else on the property.

Additionally, according to the neighbor, the victims were trying to get away from defendant when he shot them. The neighbor's testimony was supported by the location of the entry wounds on the back of the trunks of the victims' bodies. The victims also had fresh abrasions on their faces, which, according to the medical examiner, indicated that the victims fell forward when they were shot. Given the location of the entry wounds and the presence of facial abrasions, the medical examiner opined that both victims were turned away from the source of the gunfire when they were shot. Further, both of the victims were found lying face down and partially under the vehicle. There was sufficient evidence for a reasonable juror to conclude that defendant did not act in self-defense when he shot the victims in the back when they were trying to flee for safety. See *People v Jefferson*, 18 Mich App 9, 11; 170 NW2d 476 (1969) (reasoning there was sufficient evidence to prove the defendant did not act in self-defense because "the decedent was shot in the back while the decedent was 15-20 feet from the defendant and was leaving [the] defendant's home").

Moreover, a rational juror could have inferred defendant's consciousness of guilt from the evidence that defendant deleted entries in his phone regarding the video calls he made to Jonathan and a voice call he made to Jonathan about 10 minutes before the shooting. Defendant's deletion

of the call logs could be viewed as "an effort to destroy evidence of the crime of murder, thereby showing a consciousness of guilt." See *People v Sharpe*, 319 Mich App 153, 172-173; 899 NW2d 787 (2017) (cleaned up), aff'd 502 Mich 313 (2018). We will not interfere with the jury's determination of the weight of the evidence or the credibility of the witnesses. *People v Ortiz*, 249 Mich App 297, 300-301; 642 NW2d 417 (2001). Applying these standards, there was sufficient evidence to enable the jury to find beyond a reasonable doubt that defendant was guilty of the crimes charged. We will not disturb that determination.

Alternatively, in his Standard 4 brief on appeal, defendant argues the prosecution also failed to prove beyond a reasonable doubt that he premeditated the murders. We disagree. First-degree premeditated murder is defined as "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). Premeditation and deliberation are separate and distinct terms that are not statutorily defined, but our Supreme Court has explained that "to premeditate is to think about beforehand and to deliberate is to measure and evaluate the major facets of a choice or problem." *Oros*, 502 Mich at 240 (cleaned up). "Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). Premeditation may also be established by circumstantial evidence that a defendant had an opportunity to think about, evaluate, or take a "second look" at his actions. *Oros*, 502 Mich at 242-244. The opportunity need not exist for a particular length of time; it may only be a "brief moment of thought or a matter of seconds[.]" *Id*. at 243 (cleaned up). "The requisite state of mind may be inferred from defendant's conduct judged in light of the circumstances." *Id*. at 243 (cleaned up). "[W]hen considering a sufficiency-of-the-evidence issue, the question is whether the evidence introduced at the trial fairly supports an inference of premeditation and deliberation." *Id*. at 242 (cleaned up).

Defendant contends the prosecution did not present any evidence he had a chance to take a second look before killing the victims. This is simply untrue. There was evidence that defendant purchased a handgun on the morning of the shooting after exchanging messages and video calls with Jonathan for a day, and hours after his windshield was cracked (which he suspected Jonathan had done). There was also evidence that defendant called Jonathan approximately 10 minutes before the shooting. Further, there was evidence that all of the shell casings and blood were located near the victims' bodies, which were partially underneath Christopher's vehicle parked in the street in front of defendant's house. And there was evidence that defendant walked around the vehicle and shot Christopher after he shot Jonathan. Reviewing the record in the light most favorable to the prosecution and viewing every reasonable inference in favor of the jury verdict, we conclude there was sufficient evidence from which a reasonable juror could draw a reasonable inference that defendant acted with premeditation and deliberation. See *Oros*, 502 Mich at 239; *Kenny*, 332 Mich App at 402-403.

## III. SPEEDY TRIAL

In his Standard 4 brief, defendant contends his statutory and constitutional rights to a speedy trial were violated. We disagree.

Generally, when preserved, "[w]hether defendant was denied his right to a speedy trial is an issue of constitutional law, which we [] review de novo." *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). "A defendant must make a formal demand on the record to preserve a speedy trial issue for appeal." *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999) (cleaned up). Defendant did not do so in this case. As a result, this argument is unpreserved. *Id.* We review unpreserved claims of error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To obtain relief under plain-error review, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the lower court proceedings. *Id.* at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (cleaned up).

"Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009), citing US Const, Am VI; Const 1963, art 1, § 20. "We enforce this right both by statute and by court rule." *Williams*, 475 Mich at 261, citing MCL 768.1; MCR 6.004(A). "[A] defendant's right to a speedy trial is not violated after a fixed number of days." *Id.* We apply a four-part balancing test when evaluating a speedy trial claim: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id.* at 261-262.

Defendant contends this Court need not consider the four-part balancing test because the delay of longer than 180 days required dismissal of the charges as a matter of law under MCL 780.131. But "the statute applies only to those defendants who, at the time of trial, are currently serving in one of our state penal institutions, and not to individuals awaiting trial in a county jail." *People v McLaughlin*, 258 Mich App 635, 643; 672 NW2d 860 (2003). Because defendant was in county jail awaiting trial, the 180-day rule codified in MCL 780.131 is inapplicable. See *id.*

Defendant further argues that he is entitled to a presumption of prejudice because of the length of the delay in this case. "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id.* at 262. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Id.* at 261. Defendant was arrested on July 4, 2021. His trial commenced 17 months later on December 5, 2022. Accordingly, the presumption of prejudice does not apply in the present case. See *id.* at 262.

The second factor requires consideration of the reason for delay. "In assessing the reasons for delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution." *Waclawski*, 286 Mich App at 666. "Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Williams*, 475 Mich at 263 (cleaned up). Lengthier delays are more tolerable for more complex cases. *Barker*, 407 US at 530-531. In this case, a portion of the delay was caused by the death of defendant's trial counsel, which cannot be attributed to the prosecution. Because this issue is unpreserved, defendant bears the burden of proving plain error occurred. *People v*

-7-

*Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). Defendant has failed to identify any other reasons for the delay and thus this factor must weigh in favor of the prosecution. See *id.*

The third factor requires consideration of whether defendant asserted his right to a speedy trial during the proceedings below. *Williams*, 475 Mich at 261-262. There is no dispute that defendant did not do so. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v Wingo*, 407 US 514, 532; 92 S Ct 2182; 33 L Ed 2d 101 (1972). As a result, this factor weighs against defendant.

The fourth and final factor to be considered is the prejudice to the defense caused by the delay. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (cleaned up). "Prejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* "[I]n considering prejudice, a reviewing court should look for examples about how the delay between arrest and trial harmed the defendant's ability to defend against the charges." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 6. Defendant has not presented any argument or evidence supporting any prejudice in this case. Nor has he claimed personal prejudice from spending 17 months in jail while awaiting trial. Moreover, the record contains no indication evidence or testimony was lost because of the delay. Because this issue is unpreserved, defendant bears the burden of proving a plain error occurred. *Anderson*, 341 Mich App at 279. Defendant has not met that burden and thus this factor also weighs against defendant.

We conclude that defendant has failed to establish a plain error regarding the alleged violation of his right to a speedy trial. See *Carines*, 460 Mich at 763; *Anderson*, 341 Mich App at 279.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, defendant also argues that he is entitled to a new trial because his constitutional right to the effective assistance of counsel was violated. We disagree.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023), citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *Yeager*, 511 Mich at 487. Generally, we review de novo constitutional questions, while we review the trial court's findings of fact for clear error. *Id.* To preserve an ineffective-assistance-of-counsel claim, a defendant must raise the issue in a motion for a new trial or a *Ginther*[2] evidentiary hearing filed in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or in a motion to remand for a *Ginther* hearing filed in this Court, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant did

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

none of these things and thus our review of this unpreserved issue is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up). "Furthermore, because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (cleaned up).

Initially, defendant contends trial counsel was ineffective because he did not call Adriana as a witness during trial. Adriana had two children with defendant, and at the time of the shooting, she was pregnant with a child by Jonathan. Defendant contends Adriana could have explained how Jonathan had threatened defendant. Further, he insists Adriana lived with him at the time of the shooting, along with their two children, and asserts that Adriana's testimony would have shown defendant feared for his own life, the lives of his two children, Adriana, and her unborn baby.

Because defendant did not request or receive a *Ginther* hearing, the record contains no information about Adriana's proposed testimony. Additionally, defendant has not provided us with an affidavit from her regarding what she would have said at trial. Defendant had the burden of proving the factual predicate for his claim. *Muhammad*, 326 Mich App at 63. Moreover, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). We also will not "assess counsel's competence with the benefit of hindsight." *Abcumby-Blair*, 335 Mich App at 237 (cleaned up). Because defendant has not identified an error apparent on the record, his claim of ineffective assistance of counsel for failing to call Adriana as a witness fails.

Defendant also argues trial counsel erred when she failed to insist that the videos of Jonathan be translated from Spanish to English. Defendant had the burden of proving the factual predicate for his claim, *Muhammad*, 326 Mich App at 63, but he has not provided any information about what Jonathan said in the videos that were obtained from Adriana's phone. As discussed, decisions regarding what evidence to present during trial are matters of strategy, and we will not second-guess matters of trial strategy or determine it was faulty with the benefit of hindsight. *Davis*, 250 Mich App at 368; *Abcumby-Blair*, 335 Mich App at 237. Because defendant has not overcome the presumption of reasonable trial strategy, his claim of ineffective assistance of counsel for failing to translate the videos fails.

Next, defendant argues trial counsel should have requested that the trial court instruct the jury about whether evidence of defendant using a gun and shooting the victims multiple times could be used to prove premeditation. "A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d

909 (1995). "The trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *People v Montague*, 338 Mich App 29, 37; 979 NW2d 406 (2021) (cleaned up). The trial court must provide instructions that "include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *People v Craft*, 325 Mich App 598, 606-607; 927 NW2d 708 (2018) (cleaned up).

The trial court appropriately instructed the jurors on the law regarding premeditation, and defendant takes no issue with the instructions given. Instead, he believes trial counsel should have requested an additional instruction related to his use of a gun and his decision to fire 27 bullets, 20 of which connected with the victims. While the trial court's instructions did not specifically state those facts were not relevant to premeditation, the trial court instructed the jury what to consider when deciding whether defendant's killing of the victims was premeditated. The instructions focused on whether defendant had time to consider whether to kill the victims. Because the trial court gave adequate instructions "concerning the law applicable to the case and fully and fairly present[ed] the case to the jury in an understandable manner," there was no error. *Montague*, 338 Mich App at 37 (cleaned up). As a result, trial counsel did not provide objectively unreasonable representation when failing to request the unneeded and partially inapplicable jury instruction.

Finally, defendant claims trial counsel was ineffective for failing to move for dismissal of the charges against him because his right to a speedy trial was violated. As discussed above, defendant's right to a speedy trial was not violated in this case. Defense counsel was not ineffective for failing to advocate for a meritless position. See *Head*, 323 Mich App at 539.

## V. CONCLUSION

For the reasons discussed above, defendant has failed to identify any errors warranting reversal of his convictions and a new trial. As a result, we affirm.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Sima G. Patel

-10-